J-S11008-20

2020 PA Super 174

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                              :            PENNSYLVANIA
                              :
              v.              :
                              :
                              :
CHRISTOPHER S. LECLAIR        :
                              :
         Appellant            :   No. 381 WDA 2019

Appeal from the Judgment of Sentence Entered December 11, 2018
In the Court of Common Pleas of Erie County Criminal Division at No(s):
CP-25-CR-0002693-2017

BEFORE:  NICHOLS, J., MURRAY, J., and MUSMANNO, J.

OPINION BY NICHOLS, J.:                      FILED JULY 24, 2020

Appellant Christopher S. LeClair appeals from the judgment of sentence imposed after a jury found him guilty of first-degree murder and related offenses.  On appeal, Appellant challenges the sufficiency and weight of the evidence, the trial court's evidentiary rulings, and the restitution he was ordered to pay the United States Coast Guard (USCG).  We affirm Appellant's convictions, but vacate the judgment of sentence and remand for resentencing.

We adopt the factual summary set forth by the trial court.  See Trial Ct. Op., 7/19/19, at 4-13.  Briefly, Appellant was arrested and charged with the murder of his wife, Karen LeClair (Wife), based on evidence that he took her out to Lake Erie on his boat, shot her in the head, and then disposed of her body in the lake by weighing it down with an anchor.  Appellant then contacted the USCG to falsely report that Wife had fallen overboard.

The trial court set forth the relevant procedural history as follows:

On October 12, 2018, after a four-day jury trial, Appellant was found guilty of first-degree murder, abuse of a corpse, tampering or fabricating physical evidence, possessing instruments of a crime, firearms not to be carried without a license, and false reports to law enforcement authorities.[1]

On December 11, 2018, after consideration of the presentence report, sentencing guidelines, witness statements, the safety of the public, the impact of the crime on the community, and Appellant's rehabilitation potential, the [trial court imposed an aggregate sentence of life in prison.]   Further, Appellant was ordered to pay restitution to certain parties, including $705,974.80 to the [United States Coast Guard] (USCG). However, after legal argument and reconsideration by th[e trial c]ourt, this amount was reduced to $424,180.20.

On December 12, 2018, Appellant filed a post-sentence motion, raising issues of the weight of the evidence, sufficiency of the evidence, and [challenging] the imposition of restitution to the USCG.  Argument regarding the issues raised in the post-sentence motion, particularly the matter of restitution, was held on January 9, 2019.  On January 10, 2019, the [trial c]ourt issued an order denying Appellant's motion for [a] new trial and arrest of judgment.  Following arguments, the [trial c]ourt reconsidered the amounts of restitution and found Appellant to be responsible for $1,952.00 to the Pennsylvania State Police as costs of prosecution and $4,443.46 to the Crime Victim's Compensation Board for [Wife's] funeral expenses. These amounts were never contested by Appellant and were deemed legally sufficient for restitution. However, due to the complexity of the restitution issue, the [trial c]ourt gave counsel until January 23, 2019 to provide . . . legal authority regarding whether the USCG qualified as a "victim" for the purposes of restitution.

On February 12, 2019, the [trial c]ourt issued its memorandum opinion and order, finding the USCG was in fact a "victim" for the purposes of 18 Pa.C.S. § 1106, the restitution statute in effect on the date of the murder.  The [trial c]ourt also determined that

_____

[1] 18 Pa.C.S. §§ 2501(a), 5510, 4910(1), 907(a), 6106(a)(1), and 4906(b)(1), respectively.

restitution to the USCG would only be granted for the expenses that were incurred as a direct result of Appellant's criminal conduct. In fact, the [trial c]ourt determined that many of the invoiced expenses submitted by the USCG were [duplicative] fees and not incurred as a direct consequence of Appellant's criminal act. Once the [trial c]ourt determined [that] the USCG was a "victim," a second hearing was scheduled and conducted on February 26, 2018 to address the single issue of what expenses the USCG had actually incurred as a direct result of Appellant's criminal act. At the time of the hearing on February 26, 2019, Appellant and the Commonwealth came to an agreement as to the amount of restitution directly resulting from Appellant's criminal act. The terms of the agreement were placed on the record and the [trial c]ourt amended the sentencing order to reflect $424,180.20 as the amount of restitution payable to the USCG.

Trial Ct. Op., 7/19/19, at 1-2 (some formatting altered and footnote omitted).

Appellant filed a timely notice of appeal and subsequently filed a court-ordered Pa.R.A.P. 1925(b) statement.[2,3] The trial court issued a Rule 1925(a)

_____

[2] Appellant initially failed to comply with the trial court's deadline to file a Rule 1925(b) statement. However, on June 11, 2019, this Court remanded the matter to the trial court for Appellant to file a Rule 1925(b) statement and for the trial court to issue a Rule 1925(a) opinion addressing Appellant's claims. See Order, 6/11/19.

[3] In his Rule 1925(b) statement, Appellant set forth the following claims:

1. Was the weight of the evidence supported by the evidence?

2. Was the verdict of the jury supported by the weight of the evidence?

3. Should the witnesses who heard statements by [Appellant] before the alleged homicide have been excluded as violating Rule 404(b) of the Pennsylvania Rules of Criminal Procedure?

4. Should the testimony of Thomas Foye, Alexandra Shuler, Keith Love and any other testimony regarding alleged statements of the defendant made prior to June 2017 before the alleged

opinion addressing Appellant's issues, but concluding that Appellant had waived his weight and sufficiency claims by failing to specify which convictions or elements he intended to challenge on appeal. See Trial Ct. Op. at 14-15.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Was the verdict of the jury supported by the sufficiency of the evidence?

2. Was the verdict supported by the weight of the evidence?

3. Should the witnesses who heard statements by Appellant before the alleged homicide have been excluded as not relevant?

4. Should the witnesses who heard statements by Appellant before the alleged homicide have been excluded as violating Rule 404(b) of the Pennsylvania Rules of Criminal Procedure?

5. Was the USCG a victim for purposes of restitution and should it have received restitution?

Appellant's Brief at 3.

Initially, we agree with the trial court that Appellant failed to preserve his challenges to the sufficiency and weight of the evidence. See Trial Ct. Op.

_____

homicide have been excluded as violating Rule 404(b) of the Pennsylvania Rules of Criminal Procedure.

5. Was it proper for the [USCG] to have been ruled a victim for purposes of restitution?

6. Was the [USCG] a victim for purposes of restitution and should it have received restitution?

Appellant's Rule 1925(b) Statement, 6/17/19, 1-2 (unpaginated).

at 14-15. Although Appellant was convicted of multiple crimes, Appellant's sufficiency claim did not specify which elements or even which conviction he sought to challenge on appeal. Commonwealth v. Garland, 63 A.3d 339, 344 (Pa. Super. 2013) (reiterating that an appellant's Rule 1925(b) statement must state with specificity the element or elements upon which the appellant alleges that the evidence was insufficient and noting that "[s]uch specificity is of particular importance in cases where . . . the appellant was convicted of multiple crimes each of which contains numerous elements that the Commonwealth must prove beyond a reasonable doubt"). Further, Appellant did not indicate which verdict or verdicts were contrary to the weight of the evidence, and did not offer a specific reason to support his generalized claim. See Commonwealth v. Freeman, 128 A.3d 1231, 1248-49 (Pa. Super. 2015) (holding that the appellant waived his challenge to the weight of the evidence where his Rule 1925(b) statement failed to specify which verdicts were against the weight of the evidence and did not offer specific reasons as to why the verdicts were against the weight of the evidence).

Under these circumstances, we are constrained to conclude that Appellant waived his challenges to the sufficiency and weight of the evidence. See Garland, 63 A.3d at 344; see also Freeman, 128 A.3d at 1248-49. Further, the trial court's decision to address the weight and sufficiency of the evidence does not affect our finding of waiver.[4] See Commonwealth v.

_____

[4] In any event, the trial court thoroughly addressed the sufficiency and the weight of the evidence supporting Appellant's convictions. See Trial Ct. Op.

Cannon, 954 A.2d 1222, 1228 (Pa. Super. 2008) (reiterating that "when the trial court has to guess what issues an appellant is appealing, that is not enough for meaningful review" and stating that a vague Rule 1925(b) statement may result in waiver, even if the trial court correctly guesses the issues an appellant seeks to raise on appeal. (citations and quotation marks omitted)).

In his next two issues, Appellant argues that the trial court erred by allowing Thomas Foye, Alexandra Schuler, and Keith Love to testify about statements that Appellant made about his wife prior to her murder. Appellant's Brief at 16. Appellant asserts that the testimony was both irrelevant and inadmissible under Rule 404(b).[5]

By way of further background to Appellant's claims, the trial court summarized the witnesses' testimony as follows:

_____

at 15-27. The trial court concluded that "the testimony and evidence presented at trial clearly demonstrates that the Commonwealth proved each element of each crime beyond a reasonable doubt." Id. at 17. Further, the trial court found that "considering the overwhelming weight of the evidence, the verdicts do not 'shock one's sense of justice.'" Id. Therefore, even if Appellant properly preserved these claims, he would not be entitled to relief.

[5] We note that Appellant initially raised these objections in a pre-trial motion in limine, which the trial court denied. N.T. Pre-trial Mot. Hr'g, 10/4/18, at 29-55. Therefore, Appellant properly preserved his claims for appeal. See Commonwealth v. McGriff, 160 A.3d 863, 866 (Pa. Super. 2017) (applying Pa.R.E. 103 and noting that "a motion in limine may preserve an objection for appeal without any need to renew the objection at trial, but only if the trial court clearly and definitively rules on the motion. . . . [o]nce the trial court enters a definitive ruling on the record, either prior to or during trial, 'a party need not renew an objection or offer of proof to preserve a claim of error for appeal'" (citations omitted)).

[Alexandra Schuler testified that] in approximately 2004, during a social gathering at a local boating club, Appellant volunteered to [Ms.] Schuler: "[I]'m going to put her on a boat, I'm going to drive out into the middle of the lake to the deepest part of the lake, she's going to fall off the boat and no one will ever find her body." When Ms. Schuler tried to uncomfortably laugh the statement off as a joke, Appellant said he was not joking and repeated the statement. Despite hearing the statement thirteen years ago, when the news media reported a woman falling overboard on a boat in the middle of Lake Erie, Ms. Schuler immediately called the Pennsylvania State Police to report [Appellant].

Thomas Foye, a local fisherman and acquaintance of Appellant, testified about a statement Appellant made in 2011 during a conversation about a news story about a man who had killed his wife. Appellant told Mr. Foye how he would kill his wife; specifically, Mr. Foye testified that Appellant stated "that what he would do was he would take and raise the life insurance policies, take out a loan and put her on the policies, and then he would take and wait a year, year and a half, take her out to the lake, wrap her up in a fishing net or rope, and they would never find her." Appellant said this with a straight face and Mr. Foye did not get the impression it was a joke.

Keith Love testified regarding conversations with Appellant that occurred in the months prior to June 2017. Appellant advised Mr. Love that [his wife] was dying from cancer, and one day when Mr. Love asked how [Appellant's wife] was doing, Appellant responded: "Once the bitch is dead, I'll be set for life."

Trial Ct. Op. at 29.

Appellant argues that the witness testimony was not relevant to his case "because of the remoteness of time to the events of this case and the context of the conversation" in which Appellant made the statements about Wife. Appellant's Brief at 16-17. With respect to Schuler, Appellant asserts that the alleged statement was made thirteen years before Wife's murder and that it did not "reference any sort of plan" but was instead "a response to a joke." Id. at 18-19. As to Foye, Appellant argues that the statement was six years

before Wife's murder, and that he "was commenting on a television show that was playing at the time. . . . [which] did not show any sort of plan" or establish his intent to murder Wife. Id. at 17. Finally, as to his statement to Love, Appellant contends that "it in no way references anything regarding this case" and "was also months prior" to Wife's murder. Id. at 18.

The Commonwealth responds that Appellant's statements to Foye, Schuler, and Love were relevant because they made "the fact of Appellant's contempt and hatred towards [Wife] and his motive to kill her more probable." Commonwealth's Brief at 21. The Commonwealth further contends that the statements "are highly probative based on the unnervingly similar facts of his prior statements to the facts of this case." Id.

In reviewing a challenge to the admissibility of evidence, our standard of review is as follows:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

Commonwealth v. Belknap, 105 A.3d 7, 9-10 (Pa. Super. 2014) (citations omitted and formatting altered)

"Relevance is the threshold for admissibility of evidence." Commonwealth v. Tyson, 119 A.3d 353, 358 (Pa. Super. 2015) (en banc) (citation omitted).

> Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable, or tends to support a reasonable inference or proposition regarding a material fact. Relevant evidence may nevertheless be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

Commonwealth v. Danzey, 210 A.3d 333, 342 (Pa. Super. 2019) (citation and quotation marks omitted), appeal denied, 219 A.3d 597 (Pa. 2019).

> Here, the trial court addressed Appellant's claim as follows:

> In the present case, there was no error in the admission of Appellant's statements made prior to June 2017 before the murder. The statements made multiple times over the years about Appellant's plans to kill his wife prior to actually killing his wife were absolutely relevant because of their haunting factual similarity to the murder of [Wife]. Appellant's comments that he would get rid of [Wife] by taking her out on the boat and dumping her body in the lake were eerily similar to the actual method by which Appellant did kill her. These statements logically tended to establish the material facts in the case, tended to make the facts more probable, and supported a reasonable inference or presumption about the material facts. Further, the probative value of Appellant's statements outweighed the prejudicial value, especially in consideration of the other overwhelming evidence of Appellant's guilt. The statements, standing alone, would not inflame the jury to make a decision contrary to the relevant legal propositions. Admitting the statements was not unfairly prejudicial simply because they were harmful to Appellant's contrived defense that [Wife] had shot herself. Rather, the statements formed a part of the history and natural development of the events leading up to Appellant's charges and were properly admitted.

While it is clear the remoteness of the statements can be considered in determining whether prejudice occurred, in the present case the manner in which Appellant spoke, although remote in time, became highly relevant and the probative value of the statements outweighed any prejudicial effect. See Commonwealth v. Smith, 808 A.2d 215, 225 (Pa. Super. 2002) ("In determining whether the evidence is so remote that the prejudicial effect outweighs the probative value, the court has no fixed standard on which to rely, but must instead consider the nature of the crime, the evidence being offered, and all attendant circumstances.") Pennsylvania Courts have specifically addressed the admission of evidence of the prior marital relationship between a defendant and a homicide victim in conjunction with remoteness: "[E]vidence concerning the nature of the marital relationship is admissible for the purpose of proving ill will, motive or malice. . . . [I]t is generally true that remoteness of the prior instances of hostility and strained affects the weight of that evidence and not its admissibility. . . . [N]o rigid rule can be formulated for determining when such evidence is no longer relevant." Commonwealth v. Showers, 681 A.2d 746, 754 (Pa. Super. 1996) (citing Commonwealth v. Ulatoski, 371 A.2d 186, 190-191 (Pa. 1977)).

In the case sub judice, Appellant's prior statements clearly demonstrated Appellant's ill will and malice against his wife and his manifest purpose to kill her. The witnesses distinctly recalled the statements precisely because they were so chilling. Ms. Schuler testified Appellant's statement "was very creepily specific, very detailed, very much more than just a one-liner, throw-away" and left such an impact on her she immediately told her husband about it and contacted law enforcement when she learned [Wife] was missing. Appellant's statements so closely paralleled his actions that they were indeed relevant to show the nature of his relationship with [Wife]. On cross-examination, Appellant was given ample opportunity to test the witnesses' memories and test the context of the statements and did so thoroughly. Any issues regarding the remoteness of the statements to the time of the murder go to the weight of the evidence and not their admissibility; therefore, it was in the purview of the jury to consider the evidence and give each statement the appropriate weight.[fn1]

[fn1] In fact, out of an abundance of caution and deference to

> Appellant, during the charge conference on October 11, 2018, the [trial c]ourt offered to provide a jury charge regarding the testimony of Foye, Schuler, and Love. However, defense counsel declined this offer.

Trial Ct. Op. at 30-32.

Based on our review of the record, we discern no abuse of discretion or error of law in the trial court's ruling. See Belknap, 105 A.3d at 9-10. The trial court thoroughly addressed the relevance of the witnesses' testimony and concluded that the danger of unfair prejudice did not outweigh its probative value. See Danzey, 210 A.3d at 342. Therefore, we affirm on the basis of the trial court's analysis of this issue. See Trial Ct. Op. at 30-32.

Appellant next argues that the trial court erred by admitting the witnesses' testimony about Appellant's prior statements under Rule 404(b) of the Pennsylvania Rules of Evidence. Appellant's Brief at 19. In support, Appellant claims that his alleged statements were admitted as "the equivalent of bad acts by [Appellant] to show he had a long-standing plan to kill [Wife] or desire to see her killed." Id. at 20. Appellant argues that his statements were too remote to establish that he had a plan to kill Wife. Id. Further, he claims that his statements "were made generally in jest according to Schuler and Foye, and Love did not testify that the statement made to him was anything but a crude comment." Id. Therefore, Appellant argues that his "statements were not made to show a future plan to kill [Wife]," and were instead "used to show [that] Appellant had bad character." Id.

The Commonwealth responds that "[t]he trial court did not err in allowing the Commonwealth to establish motive and intent [through] the

relevant testimony of [the witnesses] to whom Appellant made incriminating statements relative to his contempt against [Wife]." Commonwealth's Brief at 1, 21. Further, the Commonwealth contends that the "probative value of [the witnesses' testimony] evidence outweigh[ed] the prejudicial impact." Id. at 20.

Rule 404(b) of the Pennsylvania Rules of Evidence provides:

(b) Crimes, Wrongs or Other Acts.

(1) Prohibited Uses. Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

(2) Permitted Uses. This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1), (2).

Here, the trial court addressed Appellant's claim as follows:

At the outset, [the trial c]ourt believes [that] Appellant's reliance on Pa.R.E. 404(b) is misplaced. Rather, th[e trial c]ourt thinks the proper legal analysis of the statements made prior to June 2017 before the alleged homicide is as admissible hearsay exceptions pursuant to Pa.R.E. 803. This conclusion is supported by the recent Pennsylvania Supreme Court case Commonwealth v. Johnson, 160 A.3d 127 (Pa. 2017). In Johnson, the defendant was on trial for the murder of his friend, her unborn child, and her four-year-old daughter. The Commonwealth presented defendant's brother[,] who testified that days before the murders[,] the defendant had stated "I'm willing to do anything to make a come up" which was interpreted by the brother to mean [that the] defendant was willing to shoot someone to make money. Over [the] defendant's objections [that] the testimony was irrelevant and inadmissible "prior bad

- 12 -

act" evidence pursuant to Pa.R.E. 404(b), the trial court admitted the testimony as an exception to Pa.R.E. 404(b) because it established motive, identity, intent and premeditation. On appeal, the Supreme Court held [that] Pa.R.E. 404(b) was not implicated because the "alleged statements were not evidence of any particular 'crime, wrong or act' . . . [r]ather, they constituted mere statements of [the defendant's] desire to make money (or, more generally, to attain success) and his willingness to do anything (even to kill) to accomplish this end." The Court further held that ". . . [e]vidence that merely advances an inference of a material fact may be admissible" and [the] defendant's statements to his brother were an example of such an inference.

In the case sub judice, Pa.R.E. 404(b) is likewise not implicated. Appellant's extrajudicial statements to the witnesses that he would take his wife out on his boat, drive out to the deepest part of Lake Erie, wrap her in fishing net or rope, and dump her body so they would never find her and he would be set for life were not evidence of a particular crime, wrong, or act.

Rather, they were mere statements demonstrating Appellant's longstanding desire to get rid of [Wife]. The statements merely advanced the inference that Appellant's plans to kill [Wife] and dispose of her body finally came to fruition on June 10, 2017, and were thus admissible.

Even in the most tortured and extreme interpretation of Pa.R.E. 404(b), the evidence was still admissible to demonstrate Appellant's plan, motive, intent, malice, and ill will toward [Wife]. "[E]vidence of prior occurrences (e.g., previous threats) and prior offenses, if they are related to the offense for which the defendant is on trial, may be admitted to show malice, motive, or intent." Commonwealth v. Glover, 286 A.2d 349, 351 (Pa. 1972). Pennsylvania Rule of Evidence 404 provides, in part, that evidence of a crime, wrong, or other act "may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Pa.R.E. 404(b); see also Glover, 286 A.2d at 351 (testimony about defendant's threat to get a weapon and "to kill this M.F." made three weeks prior to the murder was admissible as it demonstrated defendant's ill feelings and motive against the victim); Commonwealth v. Ulatoski, 371 A.2d 186, 192 (Pa. 1977) (permitting evidence of prior bruising on [the] defendant's wife before her death[,] as it tended to indicate a pattern of

physical abuse); Commonwealth v. Chamberlain, 30 A.3d 381, 419-20 (Pa. 2011) (finding testimony by a witness that [the] defendant had asked about contacting a hitman to break up his wife's extramarital affair approximately [eighteen] months before her murder was relevant to demonstrate motive, design, planning, ill will, and malice).

Here, the Commonwealth did not admit the witnesses' testimony regarding Appellant's statements to demonstrate Appellant's bad character and his propensity for committing criminal acts in violation of Pa.R.E. 404(b). Instead, Appellant's statements regarding his plan to murder and dispose of his wife were prior statements of his future intent and threats against the life of [Wife]. The statements were so specific and so closely paralleled the actual crime, they tended to show Appellant's plan, motive, intent, malice, and ill will in committing the murder of his wife. They also evidence lack of mistake or accident. However, as previously indicated, the [trial c]ourt again emphasizes [that] the admission of statements is more appropriately assessed pursuant to Pa.R.E. 803.

Trial Ct. Op. at 33-35 (some formatting and citations omitted).

Based on our review of the record, we discern no abuse of discretion in the trial court's ruling. See Belknap, 105 A.3d at 9-10. The trial court thoroughly addressed this issue and concluded that Rule 404(b) did not preclude the witnesses from testifying about Appellant's prior statements. Therefore, we affirm on the basis of the trial court's analysis of this issue. See Trial Ct. Op. at 33-35.

In his final claim, Appellant argues that the trial court erred by ordering him to pay restitution to the USCG. Appellant's Brief at 21. Specifically, Appellant argues that the USCG does not qualify as a "victim" under 18 Pa.C.S. § 1106(a). Id. Relying on Commonwealth v. Veon, 150 A.3d 435 (Pa. 2016), and Commonwealth v. Tanner, 205 A.3d 388 (Pa. Super. 2019),

Appellant contends that a government entity is only entitled to restitution if "the legislature included it as a potential victim and also whether it provided reimbursement to the victim." Id. at 23. Appellant asserts that "the legislature has never stated that a part of the United States Armed Forces should be defined as a government agency eligible for restitution." Id. at 22. Further, Appellant contends that "the USCG was not providing compensation to any victim of a crime but was performing its statutory duties of executing search and rescue operations." Id. at 22-23. Therefore, Appellant concludes that the trial court erred by ordering him to pay restitution to the USCG.

The Commonwealth responds that "the [USCG] is not a Commonwealth entity and therefore the plain language of [Section 1106] would clearly direct that they are a 'governmental entity' to whom the term 'victim' should apply." Commonwealth's Brief at 22. In support, the Commonwealth relies on this Court's unpublished decision in Commonwealth v. Steffey, 1158 WDA 2017, 2018 WL 4140624, 2018 Pa. Super. Unpub. LEXIS 3215 (Pa. Super. Aug. 30, 2018), which applied the definition of "person" set forth in 1 Pa.C.S. § 1991 to conclude that non-profit agencies were direct victims under the pre-amendment version of Section 1106. Finally, the Commonwealth argues that "Veon did not prohibit restitution to all governmental entities, only to those of the Commonwealth." Id.

In reviewing a restitution order, our standard and scope of review are as follows:

> [I]n the context of criminal proceedings, an order of restitution is not simply an award of damages, but, rather, a sentence. As such, an appeal from an order of restitution based upon a claim that a restitution order is unsupported by the record challenges the legality, rather than the discretionary aspects, of sentencing. Accordingly, the determination as to whether the trial court imposed an illegal sentence is a question of law; our standard of review in cases dealing with questions of law is plenary. This case will also necessarily call upon us to engage in statutory construction, which similarly presents a pure question of law and also implicates the legality of [the] sentence. Thus, our standard of review is de novo and our scope of review is plenary.

Commonwealth v. Hunt, 220 A.3d 582, 585 (Pa. Super. 2019) (citations and internal alterations omitted).

The version of Section 1106 in effect at the time of Appellant's offenses provided,[6] in pertinent part, as follows:

> (a) General rule. Upon conviction for any crime wherein property has been stolen, converted or otherwise unlawfully obtained, . . . or wherein the victim suffered personal injury directly resulting from the crime, the offender shall be sentenced to make restitution in addition to the punishment prescribed therefor.
>
> \* \* \*
>
> (c) Mandatory restitution.—
>
> (1) The court shall order full restitution:

---

[6] Section 1106 of the Crimes Code governs the imposition of restitution. Effective October 24, 2018, the Pennsylvania General Assembly amended the statute to reflect that a "business entity" could be a "victim" entitled to restitution. See 18 Pa.C.S. § 1106(h). We emphasize that "this Court has already held that these specific amendments to [Section] 1106 should not be effective in criminal cases that began before the effective date of the legislation . . . ." Hunt, 220 A.3d at 586 (emphasis in original and footnote omitted) (citing Commonwealth v. Tanner, 205 A.3d 388, 396 n.7 (Pa. Super. 2019)).

(i) Regardless of the current financial resources of the defendant, so as to provide the victim with the fullest compensation for the loss. . . .

(ii) If restitution to more than one person is set at the same time, the court shall set priorities of payment. However, when establishing priorities, the court shall order payment in the following order:

(A) The victim.

(B) The Crime Victim's Compensation Board.

(C) Any other government agency which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

(D) Any insurance company which has provided reimbursement to the victim as a result of the defendant's criminal conduct.

\* \* \*

(h) Definitions.   As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

\* \* \*

"Victim."  As defined in section 479.1 of the act of April 9, 1929 (P.L. 177, No. 175), known as The Administrative Code of 1929. The term includes the Crime Victim's Compensation Fund if compensation has been paid by the Crime Victim's Compensation Fund to the victim and any insurance company that has compensated the victim for loss under an insurance contract.

18 Pa.C.S. § 1106(a), (c), and (h) (footnote omitted) (repealed Oct. 24, 2018, P.L. 891, No. 145, § 1).

Regarding the statutory reference in the definitions section, "Section 479.1, formerly codified at 71 P.S. § 180–9.1, since has been recodified in the

Crime Victims Act, 18 P.S. §§ 11.101, et seq. (the 'CVA')." Veon, 150 A.3d at 449 (citation omitted). The CVA defines "victim" as follows:

(1) A direct victim.

(2) A parent or legal guardian of a child who is a direct victim, except when the parent or legal guardian of the child is the alleged offender.

(3) A minor child who is a material witness to any of the following crimes and offenses under 18 Pa.C.S. (relating to crimes and offenses) committed or attempted against a member of the child's family:

Chapter 25 (relating to criminal homicide).

Section 2702 (relating to aggravated assault).

Section 3121 (relating to rape).

(4) A family member of a homicide victim, including stepbrothers or stepsisters, stepchildren, stepparents or a fiancé, one of whom is to be identified to receive communication as provided for in this act, except where the family member is the alleged offender.

18 P.S. § 11.103. "A 'direct victim' is defined by the same section as 'an individual against whom a crime has been committed or attempted and who as a direct result of the criminal act or attempt suffers physical or mental injury, death or the loss of earnings under this act.'" Veon, 150 A.3d at 449 (alterations omitted and emphases in original).

In Veon, the defendant was convicted of misappropriating funds from the Department of Community and Economic Development (DCED). Id. Initially, the trial court ordered the defendant to pay restitution to the DCED, finding that the agency was a direct victim of the defendant's crimes. Id. On

appeal, our Supreme Court's review of the relevant statutes, legislative histories, and prior case law led to its holding that the DCED was "neither a 'direct victim' nor a reimbursable compensating government agency under Section 1106." Id. at 455 (footnote omitted).

Importantly, the Veon Court scrutinized the language in Section 11.103 and determined that the term "victim" applied to human beings only:

> Notwithstanding any legislative expansion of the definition of "victim," it is clear that the plain text of Section 11.103 still envisages "victims" as "persons" commonly understood. A "victim" under Section 11.103 must be "a direct victim," i.e., an "individual" who has suffered injury, death, or loss of earnings; or a "child," "parent," "guardian," or "family member." Every relevant noun unequivocally describes a human being, not a government agency, and nowhere else is there a relevant definition that persuades us to broaden the common understanding of these words.

Id. at 454.

Further, the Court explained that

> [a]lthough Subsection 1106(c)(1)(i)'s provisions regarding "victims" and "other government agencies" reveals that the General Assembly intended that restitution reach certain Commonwealth agencies in a manner that did not depend upon identifying such agencies as "victims," it nonetheless required first that the agency in question have provided compensation to a victim so defined.

Id. (alterations omitted). Therefore, the Veon Court held that "to qualify for restitution under Subsection 1106(c)(1)(i), a Commonwealth agency either must be a victim as that term is used in that subsection or must have reimbursed a victim as defined by Section 11.103, directly or by paying a third party on behalf of the victim." Id.; see also Tanner, 205 A.3d at 398.

More recently, in Hunt, this Court reiterated that under the version of Section 1106 in effect at the time, the term "victim" exclusively referred to individuals. Hunt, 220 A.3d at 590 (discussing Veon, 150 A.3d at 449). Further, we noted that the repealed definition of "victim" set forth in the Administrative Code of 1929 did not apply to Section 1106. Id. at 589-90. Specifically, we explained that

> the CVA's definition introduces an entirely new term of art ("direct victim") and explicitly includes certain categories of minor, material witnesses who would not be included under any plain reading of the Administrative Code of 1929's parallel provisions. Furthermore, the new term "direct victim" is limited in applicability to those individuals who suffer "physical or mental injury, death or the loss of earnings" as result of the crime committed. See 18 P.S. § 11.103. By contrast, the definitions set forth in the Administrative Code of 1929 contain no similar limitations. . . . Accordingly, we conclude that the definition of "victim" under the CVA that entered force in 1998 is the sole definition for our purposes under [Section] 1106.

Id. (some citations omitted).

Here, in concluding that the USCG was a direct victim entitled to restitution, the trial court reasoned as follows:

> Section 479.1 of the Administrative Code of 1929, formerly codified at 71 P.S. §180-9.1, originally defined a victim as "a person against whom a crime is being or has been perpetrated or attempted." However, because the Administrative Code of 1929 gave no definition of "person", th[e trial c]ourt is compelled to turn to the Statutory Construction Act, 1 Pa.C.S. § 1991 for the definition. In the Act, "person" is defined as "a corporation, partnership, limited liability company, business trust, other association, government entity (other than the Commonwealth), estate, trust, foundation or natural person." Id. A plain reading therefore compels the conclusion that the USCG, as a federal agency, is "a government entity that is other than the Commonwealth." See § 479.1 of the Administrative Code and 71

P.S. §180-9.1. Therefore, the USCG would be a victim under this version of [Section] 1106.

The plain language of the statute as written, without importing any definitions from statutes not specifically referenced by the legislature, would include the USCG as a "person" because it is a "government entity" which is not a Commonwealth agency. As such, the [USCG] fits within the definition of "victim" as explicitly provided by the Legislature.

The [trial c]ourt is also persuaded by the reasoning in Steffey, 2018 WL 4140624, although it is recognized that this authority is not binding. In Steffey, three non-profit agencies, who were the object of the defendant's criminal theft and forgery, were included in the definition of "person" pursuant to the Statutory Construction Act, 1 Pa.C.S. § 1991. Therefore, the court concluded [that no] further statutory construction analysis was necessary, and the non-profit entities were entitled to restitution.

The [trial c]ourt is cognizant that the conclusion that the USCG is a direct victim of [Appellant's] criminal conduct is buffeted by multifaceted, artful arguments to the contrary based on the fact that in 1998, § 479.1 of the Administrative Code was repealed and recodified in the Crime Victims Act, 18 P.S. § 11.103. Under the CVA, the definition of victim is drastically different. The CVA defines "victim," inter alia, as "a direct victim," which the CVA defines as "an individual." 18 P.S. §11.103. The Statutory Construction Act defines "individual" as a "natural person." 1 Pa.C.S. § 1991. However, notably, even after § 479.1 of the Administrative Code was repealed in 1998 and recodified in the CVA, the legislature specifically used § 479.1 of the Administrative Code's definition in subsequent versions of [Section] 1106.[fn1]

> [fn1] After the Administrative Code was repealed in November of 1998, the Restitution Statute at 18 Pa.C.S. § 1106 was amended on December 3, 1998 and again on November 30, 2004. § 1106 continued to reference § 479.1 of the Administrative Code and its definition of "victim" as a person and "person" is further defined at 1 Pa.C.S. § 1991 to include a "corporation . . . or government entity (other than the Commonwealth)."

*     *     *

Presently, [Appellant] advocates that Veon precludes the USCG from obtaining restitution in this case as a government entity. However, we find Veon clearly distinguishable because it addresses the question of whether a Commonwealth agency can be entitled to restitution, not whether a federal agency such as the USCG is entitled to restitution as a direct victim. The long history of judicial and statutory interpretation of restitution clearly supports the fact that a Commonwealth agency is, and always has been, explicitly barred from receiving restitution. This is true whether one employs the Administrative Code version of the definition of "victim" as "person," which includes government entities other than the Commonwealth or whether one employs the CVA definition of victim as an "individual" or "natural person." Consequently, the holding in Veon must be restricted to the facts of Veon excluding restitution to a Commonwealth agency. Any pronouncements beyond that are not applicable to the case at hand. To exclude consideration of §479.1 of the Administrative Code is distorted and clearly disproportionally restricts the class of "victims" for restitution purposes. Also, the post October 24, 2018 §1106 appears to be a Veon "fix" by now including the Commonwealth as a victim when it is an "affected government agency." See [18 Pa.C.S. §1106(c)(1)(ii)(A.1), as amended October 24, 2018].

Noting the persuasive decision in Steffey, distinguishing Veon as limited to its particular facts, and recognizing the strong legislative intent in favor of awarding restitution, and the statute in effect at the time of the crime, [the trial c]ourt finds that the USCG falls within the definition of victim as a "person" which specifically includes "government entities (other than the Commonwealth)." This reasoning results in an award of restitution for the USCG as a "government entity" other than the Commonwealth.

Trial Ct. Mem. Op. and Order, 2/12/19, at 12-14 (some citations and footnotes omitted).

Based on our review, we disagree with the trial court's conclusion that the USCG was entitled to restitution as a direct victim under Section 1106. As noted previously, our Supreme Court has explicitly stated that the term "direct victim" refers exclusively to individuals, not government agencies. Veon, 150

A.3d at 454; see also Tanner, 205 A.3d at 398 (stating that Section 11.103 "defines a 'victim' as an individual who has been harmed by the offender" and noting that "a government agency is not entitled to restitution because it is [not] an individual victim . . . ."). Further, we are bound by the Hunt Court's holding that the CVA precludes using the now-repealed definition of "victim" set forth in the Administrative Code of 1929 or the definition of "person" in 1 Pa.C.S. § 1991 to interpret the meaning of "victim" under the restitution statute.[7] See Hunt, 220 A.3d at 589-90 (stating that the CVA's definition of 'victim' "is the sole definition" for purposes of Section 1106); see also 18 Pa.C.S. § 1106(h); 18 P.S. § 11.103. Therefore, based on our governing case law, because the USCG cannot be classified as a 'direct victim' under the CVA, the restitution portion of Appellant's sentence is illegal and must be vacated. See Veon, 150 A.3d at 454.

_____

[7] The trial court's reliance on this Court's unpublished decision in Steffey does not affect our analysis. Although the amended version of Pa.R.A.P. 126 allows parties to rely on non-precedential unpublished decisions of this Court as persuasive authority, the amendment only applies to decisions filed after May 1, 2019. See Pa.R.A.P. 126(b)(1). As Steffey was filed on August 30, 2018, it cannot serve as persuasive authority. See id. We also note that after this Court's decision in Steffey, our Supreme Court granted allowance of appeal to determine "[w]hether, in a case of first impression after and in light of [the Supreme] Court's decision in Veon, the Superior Court erred in holding that a sentence to pay restitution to a nonprofit corporation may be ordered." See Commonwealth v. Steffey, 2019 WL 761214 (Pa. filed Feb. 21, 2019) (per curiam order). However, the appeal was discontinued on April 16, 2019. Until such time our Supreme Court limits or clarifies its holding in Veon, it remains binding precedent. See Commonwealth v. Reed, 107 A.3d 137, 143 (Pa. Super. 2014) (stating that we are bound by existing precedent until such time it is overturned).

Judgment of sentence vacated.  Case remanded for a new sentencing hearing.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>7/24/2020</u>