J-A25021-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                    :          PENNSYLVANIA
                                    :
            v.                          :
                                    :
                                    :
FRANKLIN RAY MARTIN, JR.         :
                                    :
            Appellant             :     No. 138 WDA 2022

Appeal from the Judgment of Sentence Entered January 18, 2022
In the Court of Common Pleas of Westmoreland County Criminal Division
at No(s): CP-65-CR-0001664-2015

BEFORE: KUNSELMAN, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.:           **FILED: February 14, 2023**

Appellant Franklin Ray Martin, Jr. appeals from the judgment of sentence imposed after a jury convicted him of rape and related offenses. Appellant argues that the trial court abused its discretion in excluding proposed impeachment evidence. Following our review, we affirm.

A prior panel of this Court summarized the relevant facts and procedural history of this case as follows:

> The victim in this case, M.K., was thirteen years old when the sexual abuse by Appellant began. M.K.'s mother, Amanda Martin, testified that she started dating Appellant in 2011 or 2012, and [Appellant] moved into her residence sometime in 2012. The two married on July 27, 2013. M.K. informed the jury that the abuse started shortly after Appellant moved in. One day, Appellant asked for a backrub while Ms. Martin was at work. Afterwards, Appellant asked her to touch his penis. When she refused, Appellant grabbed her hand and put it on [Appellant's] penis. She ran to her bedroom and locked the door. About a month later, Appellant again asked her to touch his penis. When M.K. again refused, Appellant forced her to kneel and perform oral sex on

him. Similar incidents with Appellant continued over the next two years, escalating to forcible vaginal penetration. Appellant threatened to kill [M.K.] or her family if she told. The abuse continued unabated until approximately March of 2015, when she told Appellant that he had to stop as she had a boyfriend.

Around this same time, M.K. attempted to run away from home on at least two occasions. On March 12, 2015, Ms. Martin called the police to report M.K.'s absence. Sergeant Paul Manke of the New Kensington Police Department responded to the residence. Ms. Martin told him that M.K. had tried to run away about two weeks before, and suggested that she was headed to her boyfriend's house. Sergeant Manke located M.K. and transported her back home.

Ms. Martin testified that she asked M.K. what was going on, and M.K. showed her a series of text messages, sent by Appellant, indicating sexual contact. Ms. Martin told M.K. to leave, as Appellant would be home from work later that evening. Once Appellant arrived, Ms. Martin confronted him and asked, "have you been messing around with [M.K.]?" [N.T. Trial, 8/2/16, at 171]. Appellant reacted angrily, prompting Ms. Martin to take [Appellant's] cell phone. Ms. Martin called Sergeant Manke back, and [Sergeant Manke] referred the matter to detectives for further investigation.

M.K. provided her cell phone to Detective Thomas Klawinski, and it was searched for text messages. The Commonwealth introduced a set of text messages, dated March 12, 2015, between M.K. and a number listed as "dad." Detective Klawinski read the contents of those messages to the jury:

M.K.: What did you whisper in my ear last night?

Dad: What? Don't call. I hate talking on the phone plus everyone is sleeping.

Dad: I said you gotta make up your mind. I can't keep doing this. One day we are good, the next we ain't.

Dad: Um, hello?

M.K.: What is that supposed to mean?

Dad: The day before yesterday you were playing and all up on me, then yesterday you didn't even want a hug before bed. I'm very confused.

- 2 -

M.K.: Well, I said I'm done. I have a BF. I don't wanna do it anymore.

Dad: So then, don't tease me. No more touching, tickling, holding hands, poking, groping, nothing!

M.K.: I never did and you do the same. Shit.

Dad: You were pushing your ass on me in the kitchen, pokin' my ass and grabbin' for my cawk. Don't do that no more.

M.K.: No I wasn't. Don't come onto me either.

Dad: Fine. We are done. I'm finished with it, too. It was fun but I don't need you no more.

M.K.: You never needed me to begin with.

Dad: If it makes you feel better then keep telling yourself that. You were the only thing keeping me home for a long time. You were the reason I smiled in the mornings and slept good at night.

You were my sunshine and now you make me feel dirty and sick. I hope you heard me say I love you this morning. You won't hear it [sic] again.

*Id.* at 192-94.

Detective Klawinski did not execute any search warrants on Appellant's phone. On cross-examination, the detective admitted that the designation "dad" meant only that M.K.'s phone gave the corresponding phone number that label. The detective conceded that the authorities did not link that phone number to Appellant.

Q. So I could have – I could take a cell phone and I can put [in my name] Ken Noga[1] and when I get a text message in from that particular number that I saved with it, it will show Ken Noga, correct?

A. That's correct.

Q. Is there anything about that information that tells you who owns that number or whose number that is?

---

[1] Ken Noga was Appellant's trial counsel.

- 3 -

A. There is a phone number. There is a phone number attached to dad.

Q. So did you get that phone number?

A. No, I did not. It was – the investigator would have probably talked to the girl who said, yeah, that's dad's number or that's the number I know my dad uses as the phone so I did not.

\* \* \*

Q. Now, in the course of your investigation, and you extract this data from the phone even though it says dad, there's a cell phone number associated with it, correct?

A. That's correct.

Q. You never checked who that cell phone number was listed with, correct?

A. That's correct, I did not.

*Id.* at 196-98.

The remaining direct evidence against Appellant was Ms. Martin's testimony that the two were "a little touchy-feely, sitting very close on the couch at different times," which led her to remark that "they acted more like they were married than him and I did." *Id.* at 166-67. Additionally, the Commonwealth presented the testimony of two jailhouse informants, who indicated that Appellant made incriminating comments while incarcerated.

*Commonwealth v. Martin*, No. 1345 WDA 2017, 2018 WL 6191098, at \*1-2 (Pa. Super. filed Nov. 28, 2018) (*Martin I*) (unpublished mem.) (footnote omitted).

On August 4, 2016, the jury convicted Appellant of four counts of aggravated indecent assault, three counts of involuntary deviate sexual intercourse (IDSI), two counts of rape/forcible compulsion, and one count each of statutory sexual assault, sexual assault, endangering the welfare of

children (EWOC), corruption of minors, and unlawful contact with a minor.[2] On January 27, 2017, the trial court sentenced Appellant to an aggregate sentence of twenty-five to fifty years' incarceration. Sentencing Order, 1/27/17. Appellant filed a post-sentence motion on February 1, 2017, and following several continuances, filed a supplemental motion on July 17, 2017. The trial court denied these motions on August 20, 2017.

Appellant filed a timely[3] notice of appeal. On appeal, Appellant argued that the evidence was insufficient to support his conviction, the Commonwealth committed a discovery violation regarding a jailhouse informant who testified at trial, and that the trial court abused its discretion in denying Appellant's request to admit impeachment evidence against M.K. *Martin I*, 2018 WL 6191098, at *2-3. On January 10, 2019, this Court vacated the judgment of sentence and remanded Appellant's case for further proceedings. *Id.* at *17. Specifically, this Court ordered the trial court to conduct an *in camera* evidentiary hearing concerning the admissibility of Appellant's proposed impeachment evidence against M.K. consistent with

---

[2] 18 Pa.C.S. §§ 3125(a)(1), (a)(2), (a)(3), and (a)(8); 3123(a)(1), (a)(2), and (a)(7); 3121(a)(1), and (a)(2); 3122.1(b); 3124.1; 4304(a)(1); 6301(a)(1)(ii); and 6318(a)(1), respectively.

[3] The prior panel of this Court noted that the trial court denied Appellant's post-sentence motion after the 150-day time period provided for in Pa.R.Crim.P. 720(B)(3)(b) had expired. *See Martin I*, 2018 WL 6191098, at *2 n.2. However, the prior panel concluded that this was a breakdown in the trial court's operations and declined to quash the appeal as untimely. *See id.*

Appellant's constitutional right of confrontation guaranteed by the Confrontation Clause of the Sixth Amendment. *Id.*

After several continuances, the trial court conducted an *in camera* evidentiary hearing on July 13, 2020. During the hearing, M.K. testified that Appellant was her stepfather. N.T. Evidentiary Hr'g, 7/13/20, at 5. M.K. was asked about a separate criminal case in which she had accused her cousin Steffon Kilgore (Kilgore) of sexually abusing her. *Id.* M.K. stated that on one occasion, Appellant told her that he would testify on Kilgore's behalf. *Id.* at 5. However, M.K. stated that Appellant told her this only once, and she never believed Appellant. *Id.* at 7-8. M.K. further testified that Appellant also said that he would testify against Kilgore. *Id.* at 6. When Appellant testified at the *in camera* evidentiary hearing, he stated that M.K. had lied about Kilgore and that M.K. had to "fix this stuff," or Appellant would inform the Commonwealth that M.K. was lying about Kilgore. *Id.* at 24.

On January 18, 2022, the trial court filed an opinion and order concluding that Appellant's proposed testimony was inadmissible because its probative value was outweighed by the danger of prejudice, and reinstating Appellant's judgment of sentence. Trial Ct. Op. & Order, 1/18/22, at 22. Appellant filed a timely notice of appeal and a timely court-ordered Rule 1925(b) statement. The trial court issued its Rule 1925(a) statement on March 18, 2022, which adopted the reasoning of its January 18, 2022 opinion and order.

On appeal, Appellant raises the following issue for review:

> 1. Did the sentencing court abuse [its] discretion in twice denying [Appellant's] attempts to admit impeachment evidence of [M.K.] falsely accusing another of similar crimes and [Appellant] testifying on behalf of that accused person?

Appellant's Brief at 5.

Appellant argues that the trial court denied him due process when it denied his requests to introduce evidence to impeach the credibility of M.K. *Id.* at 9-14. Appellant asserts that at the evidentiary hearing on remand, M.K. testified that Appellant told her that he intended to testify against her in a separate criminal matter where M.K. was the complainant and Kilgore was the defendant. *Id.* at 9-11. Appellant further argues that he should have been able to present evidence indicating that M.K. told Appellant that she had falsely accused Kilgore to establish that she was lying about Appellant sexually abusing her. *Id.* at 13. Appellant contends that the admission of this impeachment evidence could have swayed the minds of the jury and that its omission denied his right to a fair trial. *Id.* at 14.

In reviewing a challenge to the admissibility of evidence, our standard of review is as follows:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted); *see also Commonwealth v. Woeber*, 174 A.3d 1096, 1103 (Pa. Super. 2017) (stating that "[t]he trial judge's exercise of judgment in setting [the] limits [of cross-examination] will not be reversed in the absence of a clear abuse of that discretion, or an error of law" (citation omitted)).

This Court has explained:

Relevance is the threshold for admissibility of evidence; evidence that is not relevant is not admissible. *Commonwealth v. Cook*, 952 A.2d 594, 612 (Pa. 2008); Pa.R.E. 402. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact. Our Rules of Evidence provide the test for relevance: evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Pa.R.E. 401. Further, "the court may exclude relevant evidence if its probative value is outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Pa.R.E. 403.

Under Rule 607, "the credibility of a witness may be impeached by any evidence relevant to that issue." Pa.R.E. 607(b). The Comment to Rule 607 further emphasizes that any evidence offered to impeach the credibility of a witness must be relevant under the Rule 401 relevancy test. In addition, Rule 608 provides that "a witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness." Pa.R.E. 608(a). However, "the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of a witness's conduct." Pa.R.E. 608(b)(1).

*Commonwealth v. Leap*, 222 A.3d 386, 390-91 (Pa. Super. 2019) (some citations omitted and formatting altered).

Further, the *Woeber* Court explained that

the Sixth Amendment guarantees criminal defendants the right to confront and cross-examine adverse witnesses in order to ensure a fair and reliable trial.  Cross-examination may be employed to test a witness' story, to impeach credibility, and to establish a witness's motive for testifying.  A trial court has discretion to determine both the scope and the permissible limits of cross-examination. . . .  It is certainly within the scope of cross-examination to ask the witness if she ever made a statement inconsistent with her testimony in court.

*Woeber*, 174 A.3d at 1103 (citations omitted and formatting altered).

As this Court noted in *Martin I*:

The [United States Supreme Court] has cautioned, however, that the defendant's right of confrontation is not absolute.

It does not follow, of course, that the Confrontation Clause of the Sixth Amendment prevents a trial judge from imposing any limits on defense counsel's inquiry into the potential bias of a prosecution witness.  On the contrary, trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety or interrogation that is repetitive or only marginally relevant.

*Martin I*, 2018 WL 6191098, at *12 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)); *see also Commonwealth v. Rogers*, 250 A.3d 1209, 1216 (Pa. 2021) (explaining that "[a]t the same time, the confrontation right is not absolute.  It guarantees an opportunity for effective cross-examination,

not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish" (citation and quotation marks omitted)).

Here, the trial court addressed Appellant's claim as follows:

[T]he Superior Court noted that the United States Supreme Court has cautioned that the defendant's right of confrontation is not absolute . . . .

*   *   *

Based on the testimony presented at the evidentiary hearing, approximately two months before anyone was charged with any crime arising out of an alleged child sexual abuse, [Appellant] made a vague remark that he would testify in the Kilgore trial if M.K. said anything about the ongoing sexual relationship between [Appellant] and her.

M.K. testified at the evidentiary hearing that, more than two years prior to the charges being filed against [Appellant], [Appellant] had said something to her, the exact nature of which, appears to be unclear and which, in any event, she didn't believe, and which he never mentioned to her again, despite the passage of those years and even up to the time of the trial of the Kilgore matter. It is difficult to conceive how this vague, indistinct, and possibly misunderstood remark by [Appellant] is probative, but clearly, any probative value pales in comparison to the prejudice in such testimony in a case of child sexual abuse, such as the instant case.

The [c]ourt notes that M.K.'s recollection of [Appellant's] remark to her regarding her revelation of the ongoing abuse by [Appellant] was somewhat vague and contradictory. At one point, M.K stated, "[Appellant] told me he was going to testify **on [Kilgore's] behalf**, but never really mentioned about what he was going to say." [N.T. Evidentiary Hr'g, 7/13/20, at 5]. (Emphasis added). At another point, when asked again by the Commonwealth what [Appellant] said, M.K. testified "[Appellant] was going to testify **against [Kilgore]** if I ever said anything about me and [Appellant]." [*Id.* at 5] (Emphasis added). That M.K. did not have a clear understanding about [Appellant's] proposed Kilgore testimony is apparent. That the whole matter was somewhat vague is equally apparent.

- 10 -

> [Weighed] against the probative value of this vague and somewhat contradictory testimony by the child victim, is the possibility, if not probability, of the possible inference against that victim that a jury might take, simply because the victim had accused two persons of sexual abuse. Moreover, once this subject begins to be explored, it is certainly conceivable that the jury might speculate about collateral matters. By any analysis, whatever slight probative value this evidence might have on the question of the child's motive or bias is clearly outweighed by the potential for prejudice presented by such evidence.

Trial Ct. Op. & Order at 19, 21-22 (citations and quotation marks omitted).

Following our review of the record, we conclude that the trial court acted within its sound discretion in that its determinations are supported by the record. *See LeClair*, 236 A.3d at 78; *Woeber*, 174 A.3d at 1103. Additionally, the record reflects that the trial court found M.K.'s testimony from the *in camera* evidentiary hearing to be credible and Appellant's to be incredible. *See* Trial Ct. Op. & Order at 16-18; *see also Commonwealth v. Page*, 59 A.3d 1118, 1130 (Pa. Super. 2013) (holding that "[a] determination of credibility lies solely within the province of the factfinder."); *Commonwealth v. Darush*, 389 A.2d 1156, 1159 (Pa. Super. 1978) (holding that, absent an abuse of discretion, the trier's determination of credibility will not be disturbed on appeal when supported by the record). Further, according to M.K.'s testimony during the *in camera* evidentiary hearing, Appellant made vague and contradictory statements to M.K. about whether he would testify on Kilgore's behalf or against Kilgore. *See* N.T. Evidentiary Hr'g, 7/13/20, at 5-6. Significantly, the trial court noted that upon cross-examination, Appellant testified that he never told the police that M.K. threatened him even

after he was arrested on the charges in the instant matter and that he never told them that she threatened to bring false charges against him. *Id* at 18.

Further, we agree with the trial court's analysis in that our Court has concluded that the United States Supreme Court has "cautioned that the defendant's right of confrontation is not absolute[.]" Trial Ct. Op. at 19 (citing *Martin I*, 2018 WL 6191098, at \*12 (some citations omitted)). Accordingly, we conclude that the probative value of Appellant's proposed impeachment testimony did not outweigh the danger of undue prejudice and confusion that such testimony could evoke in the minds of the jury. *See Leap*, 222 A.3d at 390-91. Therefore, the trial court did not violate Appellant's Sixth Amendment right of confrontation by precluding the subject impeachment cross-examination of M.K.

For these reasons, we conclude that the trial court did not err nor abuse its discretion by precluding Appellant's proposed impeachment evidence. *See id.*; *see also LeClair*, 236 A.3d at 78; *Woeber*, 174 A.3d at 1103.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>2/14/2023</u>