**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANTOINE KEARNEY | : | |
| | : | |
| Appellant | : | No. 590 MDA 2021 |

Appeal from the Judgment of Sentence Entered December 9, 2020
In the Court of Common Pleas of Lebanon County Criminal Division at
No(s): CP-38-CR-0002069-2019

BEFORE: BOWES, J., NICHOLS, J., and McCAFFERY, J.

MEMORANDUM BY NICHOLS, J.: **FILED: JUNE 16, 2022**

Appellant Antoine Kearney appeals from the judgment of sentence imposed following his convictions for possession with intent to deliver (PWID), possession of a controlled substance, possession of drug paraphernalia, and possession of marijuana for personal use.[1] Appellant raises multiple issues concerning the denial of his motion to suppress, evidentiary rulings at trial, the sufficiency and weight of the evidence, and his sentence. After review, we vacate Appellant's judgment of sentence and remand for further proceedings consistent with this memorandum.

The trial court summarized the underlying facts of this matter as follows:

On December 2, 2019, [Latoya] Hines called emergency services regarding a disturbance at 363 North 11th Street in Lebanon City. She reported that a man named "Antoine" was aggressively trying to enter her residence. Officer [Thomas] Kocher responded to the

---

[1] 35 P.S. §§ 780-113(a)(30), (a)(16), (a)(32), and (a)(31), respectively.

call. As he was arriving on scene, Officer Kocher spotted [Appellant] and, noting that he was the only person within sight, decided to initiate contact with [Appellant]. After briefly questioning [Appellant], Officer Kocher noticed an aroma of marijuana on [Appellant's] person and asked [Appellant] about this. [Appellant] admitted to Officer Kocher that he did have marijuana on his person and consented to being searched. As a result of this search, Officer Kocher located a bag of marijuana, a jar with residue, and approximately 1,200 small zip lock bags.

At this point, Officer Kocher had not made contact with the 911 caller, so he proceeded to the residence that was indicated in the phone call. After arriving there, he spoke with Ms. Hines, who had reported the disturbance. During their conversation, Officer Kocher requested permission to search the residence. Ms. Hines granted that permission. Ms. Hines took Officer Kocher to the attic. Ms. Hines informed Officer Kocher that [Appellant] had been staying there for a period of time. While in the attic, Ms. Hines indicated to Officer Kocher that a futon and two small piles of clothes belonged to [Appellant]. Within a pair of pants located within one of these piles, Officer Kocher found a bag containing approximately forty grams of cocaine. Officer Kocher testified that the pants appeared to be approximately the same size that a person of [Appellant's] size would wear. In addition to the cocaine, Officer Kocher found two scales and a marijuana grinder. When questioned about the ownership of these items, [Appellant] denied any knowledge of the items or that they were in his possession.

Ms. Hines gave testimony which provided more insight into [Appellant's] living situation at her residence. She indicated that [Appellant] had arrived approximately three weeks before with a futon and a bag of clothing. He stored all his items in the attic of the home where he would spend the night on some occasions. [Appellant] would contact Ms. Hines via a phone call when he would arrive at the residence in order to be let inside.

On the day that Ms. Hines placed the 911 call, [Appellant] was present at the residence. He had stayed over the night prior. Before leaving, Ms. Hines heard [Appellant] threaten Ms. Hines' friend. Instead of confronting him, Ms. Hines waited for [Appellant] to leave and then requested that he not return. [Appellant] responded by loudly banging on the front and back doors to Ms. Hines' home. That is what eventually prompted her to call police. When Ms. Hines allowed officers into the home to

- 2 -

> search the attic where [Appellant] stayed, she indicated all the items searched belonged to [Appellant]
>
> Officer Kocher later provided further testimony in which he gave more specific details on the drugs and related paraphernalia located in the attic. He estimated that the cocaine found in the attic had a street value of approximately $4,000, and that the bags and paraphernalia discovered were consistent with someone involved in drug trafficking.

Trial Ct. Op & Order, 4/19/21, at 2-4.

Following a jury trial, Appellant was convicted of all charges. On December 9, 2020, the trial court conducted a sentencing hearing. At the hearing, Appellant's counsel noted that the sentencing guidelines set forth in the presentence investigation (PSI) report appeared to be based on a prior record score (PRS) for a repeat felony offender (RFEL).[2] Counsel noted that Appellant had prior felony convictions in New York and New Jersey. Further, counsel recognized that Appellant's robbery conviction was likely four points for purposes of Appellant's PRS. However, counsel argued that it was "unclear" whether Appellant should be treated as a RFEL, as Appellant's out-of-state convictions for assault and unlawful firearms possession were not equivalent to the Pennsylvania offenses. N.T. Sentencing Hr'g, 12/9/20, at 2.

After reviewing the sentencing recommendations provided in the PSI report, the trial court concluded that the guidelines were based on a PRS of

---

[2] *See* 204 Pa. Code § 303.4(a)(2) (stating that the RFEL designation applies to offenders who have "previous convictions or adjudications for Felony 1 and/or Felony 2 offenses[,] which total 6 or more points in the prior record, and who do not fall within the Repeat Violent Offender Category").

five, not RFEL. *Id.* at 3-4 (reflecting the trial court's conclusion that "40 months to 52 months" was the minimum recommended sentence for PWID). Therefore, the trial court sentenced Appellant to forty months to fifteen years' incarceration for PWID, with all other sentences to run concurrently.[3]

Appellant filed a timely post-sentence motion in which he argued that the trial court erroneously calculated Appellant's minimum sentence based on his designation as a RFEL. The trial court conducted a post-sentence motions hearing on January 27, 2021. At the hearing, Probation Officer Michelle Marshall stated that Appellant was a RFEL due to his prior out-of-state convictions for robbery (a first-degree felony) and unlawful possession of a firearm (a second-degree felony). N.T. Post-Sentence Mot. Hr'g, 1/27/21, at 4. Based on that information, the trial court denied Appellant's motion.

Appellant subsequently filed a timely notice of appeal and a court-ordered Rule 1925(b) statement. The trial court issued an order in lieu of a Rule 1925(a) opinion. *See* Trial Ct. Order, 7/14/21. On March 29, 2022, this Court remanded the matter for the trial court to issue a supplemental Rule 1925(a) opinion addressing Appellant's claims. The trial court subsequently

---

[3] Specifically, the trial court sentenced Appellant to concurrent terms incarceration as follows: forty months to fifteen years for PWID, three months to one year for possession of drug paraphernalia, and fifteen to thirty days for possession of marijuana for personal use. Appellant's conviction for possession of a controlled substance merged with PWID for sentencing purposes.

filed a response stating that Appellant's claims were meritless.  *See* Trial Ct. Resp. to Order, 4/14/22, at 1-3.

On appeal, Appellant raises the following issues:

1. The [trial c]ourt erred when it denied [Appellant's] motion to suppress evidence, specifically, the officer did not have reasonable suspicion or probable cause to justify the stop and detention of [Appellant] in accordance with the Article I, Section 8 of the Pennsylvania Constitution and the Fourth Amendment of the Constitution of the United States.

2. [The trial c]ourt erred when it sustained the Commonwealth's objection and admonished defense counsel when for attempting to cross-examine the officer regarding the steps that he took, and/or failed to take, when investigating this matter.

3. [The trial c]ourt erred when it sustained the Commonwealth's objection arguing that defense counsel's question regarding whether the witness smelled marijuana was outside of the scope of direct, as the smell of marijuana was previously testified to by the officer and was clearly at issue in the case.

4. [The trial c]ourt erred when it allowed the Commonwealth to lead the Commonwealth's drug expert during re-direct examination over [Appellant's] objection.

5. The evidence was insufficient to establish [Appellant's] guilt on counts 1, 2 and 3 of the information.

6. The verdict with respect to counts 1, 2, and 3 was against the weight of the evidence as it relied on circumstantial evidence and the testimony of the individual who rented the home, who called the police on the [Appellant] and who clearly had a personal interest and or bias in the disposition of this matter.

7. The sentence issued in this case is an illegal sentence as [Appellant's] prior record score should have been calculated as a five (5), and not as an RFEL based on his prior record, thus placing his minimum sentence of forty (40) months of incarceration outside of the ranges of the sentencing guidelines without justification for such a sentence being placed on the record at the time of sentencing.

Appellant's Brief at 10-11.

## Motion to Suppress

In his first issue, Appellant claims that the trial court erred in denying his motion to suppress. Appellant's Brief at 55. In support, Appellant argues that Officer Kocher "detained" Appellant before he had any reason to believe that Appellant was involved in criminal activity. *Id.* at 57-58. Appellant asserts that, at the time Officer Kocher stopped Appellant, Appellant was simply walking down the street. Appellant contends that the seizure occurred before Appellant gave his name to police and before Officer Kocher detected marijuana. Therefore, Appellant concludes that "there was no basis to support his detention, and the stop was not permissible under our law." *Id.*

"Our standard of review in addressing a challenge to the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct." *Commonwealth v. Jones*, 988 A.2d 649, 654 (Pa. 2010).

It is well settled that "Article I, § 8 of the Pennsylvania Constitution and the Fourth Amendment to the United States Constitution both protect the people from unreasonable searches and seizures. Jurisprudence arising under both charters has led to the development of three categories of interactions between citizens and police." *Commonwealth v. Lyles*, 97 A.3d 298, 302 (Pa. 2014) (citations omitted).

> The first of these is a "mere encounter" (or request for information) which need not be supported by any level of suspicion, but carries no official compulsion to stop or to respond. The second, an "investigative detention" must be supported by a reasonable suspicion; it subjects a suspect to a stop and a period of detention, but does not involve such coercive conditions as to constitute the functional equivalent of an arrest. Finally, an arrest or "custodial detention" must be supported by probable cause.

*Commonwealth v. Pakacki*, 901 A.2d 983, 987 (Pa. 2006) (citations omitted); *see also Commonwealth v. Hicks*, 208 A.3d 916, 927 (Pa. 2019) (explaining that an investigative detention is also known as a "'*Terry*[4] stop,' or, when coupled with a brief pat-down search for weapons on the suspect's person, a 'stop and frisk'").

"In evaluating the level of interaction, courts conduct an objective examination of the totality of the surrounding circumstances. We are bound by the suppression court's factual findings, if supported by the record[.]" *Lyles*, 97 A.3d at 302 (citations omitted).

The issue of whether "a seizure occurred [] is a pure question of law subject to plenary review." *Id.* (citation omitted). Our Supreme Court has explained:

> No bright lines separate these types of encounters, but the United States Supreme Court has established an objective test by which courts may ascertain whether a seizure has occurred to elevate the interaction beyond a mere encounter. The test, often referred to as the "free to leave test," requires the court to determine whether, taking into account all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business. Whenever a police officer

---

4 *Terry v. Ohio*, 392 U.S. 1 (1968).

accosts an individual and restrains his freedom to walk away, he has "seized" that person.

***Commonwealth v. Adams***, 205 A.3d 1195, 1200 (Pa. 2019) (citations omitted and some formatting omitted).

[T]o establish grounds for reasonable suspicion, the officer must articulate specific observations which, in conjunction with reasonable inferences derived from those observations, led him reasonably to conclude, in light of his experience, that criminal activity was afoot and that the person he stopped was involved in that activity. The question of whether reasonable suspicion existed at the time [the officer conducted the stop] must be answered by examining the totality of the circumstances to determine whether the officer who initiated the stop had a particularized and objective basis for suspecting the individual stopped. Therefore, the fundamental inquiry of a reviewing court must be an objective one, namely, whether the facts available to the officer at the moment of the [stop] warrant a man of reasonable caution in the belief that the action taken was appropriate.

***Commonwealth v. Green***, 168 A.3d 180, 184 (Pa. Super. 2017) (citation omitted).

This Court has explained:

[T]he relevant inquiry is whether an officer possesses reasonable suspicion of criminal activity before initiating the detention. While experience teaches that the reality of these encounters often does not yield sharp constitutional lines, the prescribed constitutional analysis demands that at the moment an encounter moves from a consensual "mere encounter" to an investigative detention, police must already have the requisite reasonable suspicion to support that detention—reasonable suspicion cannot be based on information discovered after the detention has begun.

***Commonwealth v. Mackey***, 177 A.3d 221, 232 (Pa. Super. 2017) (citations and emphasis omitted).

Here, the trial court made the following findings of fact at the suppression hearing:

First of all, [Officer Kocher] gets a dispatch . . . that a caller has called for a disturbance, someone trying to--banging on the door, trying to get in[,] and his name is Antoine. That's all you have.

[Officer Kocher] has explained his prior history. He's responded to a variety of disturbance calls. They can be anything from someone that's legitimate to someone that's breaking down on the door. He doesn't know at that point. He sees a man leaving. The only person in the area, nobody else.

And I want to address this matter because of [Appellant's] skin being black, blacker than mine. Mine is dark too but it's--it's "oh, oh, well, he's black that might be him." No. He's the only person there. So [Officer Kocher] says the most reasonable thing: "Are you Antoine?" "Yeah." "Hold on, Antoine, I need to talk to you." "Well, I want to leave." "No, you got to hold on until I get another guy here to see what's going on." [Officer Kocher] does all that. I find that to be extremely reasonable and ordinary.

. . . The issue here this afternoon is whether the detention by Officer Kocher of [Appellant] was unlawful. It was not. It was fair, it was reasonable. It was based on all the circumstances that an officer normally would do in a disturbance call such as that where in this case the caller gave dispatch the name of the individual, Antoine, which it's not an unusual name but it's not a normal name. You couple that with the fact that [Appellant] is the only person in the vicinity outside that door. No one else walking away.

The officer says "Are you Antoine?" The answer is "Yeah, I am." "Hold on." "I want to leave." "No, hold on." "I got to check, find out what's going on." That's not an unlawful detention. Not in, you know, there's plenty of basis here for the officer to be concerned and to do some investigation before he releases him. Unfortunately for [Appellant], in the process [of] that detention[, he] was searched lawfully and [the police] find drugs. But the detention was not unlawful, it was reasonable. It was based on a call, that there was potential disturbance. A person banging on the door trying to get in and his name was Antoine. And they felt concerned enough that they would call the police central, send somebody out. . . . I understand why the motion to suppress was

filed. That's what you got to do, but does that make the detention unlawful?

In my opinion as a judge[, it's] not even close. This officer had the name of the individual. He had the basis to be concerned that he didn't know why he was . . . banging on the door causing this disturbance or whatever. He had a duty to investigate. He did it promptly, it wasn't unreasonable. It wasn't long. But in the process, he told him to stay there until he got it complete. That's not an unlawful detention. Accordingly, the motion to suppress is respectfully denied.

N.T. Suppression Hr'g, 7/22/20, at 27-30.

Based on our review, we conclude that the trial court's factual findings are supported by the record. *See Jones*, 988 A.2d at 654. As noted by the trial court, Officer Kocher responded to a call for a disturbance involving an individual named "Antoine." *See* N.T. Suppression Hr'g at 6. Appellant was the only person at the scene when Officer Kocher arrived. *Id.* At that point, Officer Kocher approached Appellant and asked if his name was Antoine. *Id.* Because Appellant was not compelled to stop or respond to Officer Kocher's inquiry, this initial interaction was a mere encounter which did not require any level of suspicion. *See Pakacki*, 901 A.2d at 987 (explaining that a "request for information" is not a seizure).

However, after Appellant confirmed that his name was Antoine, Officer Kocher directed Appellant to remain at the scene and called for backup. N.T. Suppression Hr'g at 7-8. At that point, the encounter became an investigative detention, which required reasonable suspicion. *See Pakacki*, 901 A.2d at 987.

Based on the totality of the circumstances, including the report that a person named Antoine was attempting to break into a residence, the fact that Appellant's name was Antoine, and Appellant's presence at the scene, we conclude that Officer Kocher had reasonable suspicion to believe that "criminal activity was afoot and that the person he stopped was involved in that activity." **Green**, 168 A.3d at 184. Therefore, we agree with the trial court that the detention was lawful. **See id.; see also Mackey**, 177 A.3d at 232. Accordingly, Appellant is not entitled to relief on this issue.

**Evidentiary Rulings**

In his next three claims, Appellant challenges various evidentiary rulings by the trial court. Briefly, Appellant argues that the trial court erred in (1) allowing the Commonwealth to ask Officer Kocher leading questions on redirect; (2) limiting Appellant's cross-examination of Officer Kocher with respect to "the lack of investigation into Appellant's cell phone;" and (3) precluding Appellant from asking Ms. Peterson about whether she ever smelled marijuana while Appellant was staying at Ms. Hines' residence. Appellant's Brief at 42-51.

In reviewing Appellant's evidentiary claims, we are guided by the following principles:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court[,] and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment[ but, rather, is] the overriding or misapplication of the law, or the exercise of judgment[,] that is manifestly unreasonable, or the result of bias, prejudice, ill-will[,]

or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused[,] and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa. Super. 2020) (citation omitted), *appeal denied*, 244 A.3d 1222 (Pa. 2021).

Pursuant to Rule 611 of the Pennsylvania Rules of Evidence, "leading questions should not be used on direct or redirect examination except as necessary to develop the witness's testimony." Pa.R.E. 611(c). However, this Court has held that a "trial judge has wide discretion in controlling the use of leading questions." *Commonwealth v. Lambert*, 765 A.2d 306, 360 (Pa. Super. 2000) (citation omitted). As such, "[t]he court's tolerance or intolerance for leading questions will not be reversed on appeal absent an abuse of discretion." *Id.* (citation omitted).

Rule 611 also states that cross-examination "should be limited to the subject matter of the direct examination and matters affecting credibility[;] however, the court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination." Pa.R.E. 611(b). The right to cross-examine witnesses, although fundamental, is not absolute. *Commonwealth v. Rosser*, 135 A.3d 1077, 1088 (Pa. Super. 2016) (*en banc*). "A trial court has discretion to determine both the scope and the permissible limits of cross-examination. The trial judge's exercise of judgment in setting those limits will not be reversed in the absence of a clear abuse of

that discretion, or an error of law." ***Commonwealth v. Briggs***, 12 A.3d 291, 335 (Pa. 2011) (quotation marks and citations omitted).

Finally, it is well settled that "[t]o constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." ***Commonwealth v. Bond***, 190 A.3d 664, 667 (Pa. Super. 2018) (citation omitted). An error is not harmful or prejudicial, *i.e.*, is a "harmless error," when the Commonwealth proves:

> (1) the error did not prejudice the defendant or the prejudice was *de minimis*; (2) the erroneously admitted evidence was merely cumulative of other untainted evidence which was substantially similar to the erroneously admitted evidence; or (3) the properly admitted and uncontradicted evidence of guilt was so overwhelming and the prejudicial effect of the error was so insignificant by comparison that the error could not have contributed to the verdict.

***Commonwealth v. Burno***, 154 A.3d 764, 796 (Pa. 2017) (citation omitted); ***see also Commonwealth v. Hamlett***, 234 A.3d 486, 492 (Pa. 2020) (stating that "*sua sponte* invocation of the harmless error doctrine is not inappropriate as it does nothing more than affirm a valid judgment of sentence on an alternative basis").

<u>Leading Questions on Redirect Examination</u>

Appellant argues that the trial court erred by allowing the Commonwealth to ask Officer Kocher leading questions on redirect examination. Appellant's Brief at 46. In support, Appellant asserts that "[t]he Commonwealth led Officer Kocher through almost all of his testimony from

pages 55 through 62 of the hearing."[5] *Id.* at 50. Further, he contends that the Commonwealth "provided the answers that she wished for the jury to hear," which allowed the Commonwealth to control the scope of Officer Kocher's testimony. *Id.* Appellant argues that the Commonwealth's leading questions were improper and, therefore, the trial court erred in overruling his objection. *Id.*

Initially, we note that although Appellant claims that the Commonwealth asked Officer Kocher leading questions throughout redirect examination, he only made one objection at trial. Therefore, because there was only one limited objection, Appellant's remaining challenges to the alleged leading questions are waived. *See Commonwealth v. McFalls*, 251 A.3d 1286, 1293 (Pa. Super. 2021) (reiterating that "to preserve an issue for review, a party must make a timely and specific objection at trial"), *appeal denied*, --- A.3d ---, 332 MAL 2021, 2022 WL 1486103 (Pa. filed May 11, 2022).

Appellant's preserved issue arose during the Commonwealth's redirect of Officer Kocher. After Officer Kocher confirmed that one of the witnesses, Ms. Peterson, was an older woman with mobility issues, the Commonwealth asked: "[s]o it wouldn't necessarily be unexpected for her to remain where she was instead of going down several flights of stairs to speak with you?"

---

[5] The Commonwealth responds that Appellant waived this claim because he only objected to one of the Commonwealth's questions on redirect. *See* Commonwealth's Brief at 17 (citing N.T. Trial at 59).

- 14 -

N.T. Trial at 59.  Appellant objected to the Commonwealth's question for speculation and leading, and the objection was overruled.  ***Id.***

The trial court concluded that the prejudicial effect of the Commonwealth's leading question was *de minimis.*  ***See*** Trial Ct. Resp. to Order at 1.  Based on our review of the record, we agree.  The record confirms that there was conflicting testimony about where Ms. Peterson was when Officer Kocher entered the house.  ***See*** N.T. Trial at 39-40, 58.  However, aside from Appellant's bald claim of prejudice, there is no indication that the Commonwealth's question about Ms. Peterson's mobility issues had any impact on the outcome of the trial.  Therefore, although the question was leading and the trial court abused its discretion in overruling the objection, the error was harmless.  ***See Burno***, 154 A.3d at 796.  Accordingly, Appellant is not entitled to relief.

<u>Cross-Examination of Officer Kocher</u>

Appellant also argues that the trial court erred by sustaining the Commonwealth's objection when Appellant asked Officer Kocher about "the lack of investigation" into Appellant's phone on cross-examination. Appellant's Brief at 29.

Specifically, Appellant refers to a line of questioning in which trial counsel asked Officer Kocher to explain why he failed to utilize technology from the Pennsylvania State Police (PSP) that would have allowed him to gain access to Appellant's cell phone.  ***See*** N.T. Trial at 65-66.  Officer Kocher

explained that "generally the policy is that if there's a homicide or a very serious case, then [the PSP] will accept that evidence and get into the [defendant's] phone. But that's a resource that's not really available for a case like this." *Id.* Despite Officer Kocher's explanation, trial counsel continued to question Officer Kocher about why he "didn't ask" and "didn't try" to seek assistance from the PSP. *Id.* at 66. Ultimately, the trial court dismissed Officer Kocher as a witness, conducted a side bar, and admonished trial counsel for "arguing with a witness instead of asking questions." *Id.*

On appeal, Appellant argues that "this ruling prevented [him] from questioning the quality of the police investigation and whether they took all steps to get the right person prior to charging him with felony offenses." Appellant's Brief at 29.

The trial court concluded that Appellant's claim was *de minimis* and that, even if the trial court "was at error in sustaining the objection[, it] would have resulted in harmless error and [did] not rise to the level of overturning the decision of the jury." Trial Ct. Resp. to Order at 1.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See LeClair*, 236 A.3d at 78. As noted previously, Officer Kocher clearly stated that he did not attempt to utilize the PSP's cell phone technology because it was not available for use in this type of case. *See* N.T. Trial at 65-66. Therefore, even if the trial court had allowed Appellant to ask Officer Kocher why he "didn't ask" or "didn't try" to seek assistance from the

PSP, his answer would have been cumulative of prior testimony. Accordingly, no relief is due.

Cross-Examination of Ms. Peterson

Finally, Appellant contends that the trial court erred by sustaining the Commonwealth's objection when Appellant asked Ms. Peterson if she ever smelled marijuana in Ms. Hines's attic while she was living at the residence. Appellant's Brief at 30. Appellant claims that Ms. Peterson's testimony was relevant to "bring into question the veracity" of Officer Kocher, who stated that he smelled marijuana when he entered the attic prior to Appellant's arrest. *Id.*

The trial court addressed Appellant's claims as follows:

[This] issue is misleading and inherently incorrect. [Appellant's] counsel was attempting to question the witness, [Ms.] Peterson, when the Commonwealth objected that his question was outside the scope of direct. [Appellant] now states that "the smell of marijuana was previously testified to by the officer," which was a completely different witness from the one being questioned when this objection was raised. Therefore, the question was outside the scope of direct as the issue had been raised with a previous witness and not the current witness.

Trial Ct. Resp. to Order at 1-2.

Based on our review of the record, we discern no abuse of discretion by the trial court. *See LeClair*, 236 A.3d at 78. As noted by the trial court, Appellant attempted to cross-examine Ms. Peterson about whether she smelled marijuana in the attic, which was beyond the scope of her direct examination. *See* Trial Ct. Resp. to Order at 2. Therefore, the trial court did

not abuse its discretion in sustaining the Commonwealth's objection. *See Briggs*, 12 A.3d at 335; *see also* Pa.R.E. 611(b).

## Sufficiency of the Evidence

Appellant argues that there was insufficient evidence to support his convictions for PWID, possession of a controlled substance, and possession of drug paraphernalia. However, although Appellant preserved a sufficiency challenge in his Rule 1925(b) statement, he failed to identify which elements of each crime he sought to challenge on appeal. *See* Appellant's Rule 1925(b) Statement, 6/3/21, at 1 (reflecting his claim that "[t]he evidence was insufficient to establish [Appellant's] guilt on Counts 1, 2 and 3 of the Information"). Therefore, Appellant's sufficiency claims are waived. *See Commonwealth v. Garland*, 63 A.3d 339, 344 (Pa. Super. 2013) (reiterating that "an appellant's Rule 1925(b) statement must state with specificity the element or elements [for] which the appellant alleges that the evidence was insufficient" (citation omitted)). Accordingly, he is not entitled to relief.

## Weight of the Evidence

Appellant also challenges the weight of the evidence supporting his convictions for PWID, possession of a controlled substance, and possession of drug paraphernalia. Appellant's Brief at 38. In support, Appellant argues that the Commonwealth's witnesses provided "vague and inconsistent" testimony regarding Appellant's link to the contraband recovered from the attic. *Id.* at 41. Appellant also notes that, in addition to Ms. Hines, there were two other individuals living at the residence, including Ms. Hines's seventeen-year-old

son and a family friend, Ms. Peterson. *Id.* at 40. Appellant claims that all three people "had open and unfettered access to these items" and that "[i]t would be easy for any of those individuals to place the contraband with [Appellant's] items in the attic." *Id.* at 41. Appellant asserts that Ms. Hines "was combative and unable to remember salient facts of that day" and that she "did not recognize Appellant's clothes" or see "contraband in Appellant's possession." *Id.* at 41-42. Further, Appellant argues that "[o]ther than contraband being stuffed in between [Appellant's] clothing, there is no evidence connecting him with the contraband." *Id.* at 42. Therefore, he concludes that the jury's verdict was against the weight of the evidence.

When considering a challenge to the weight of the evidence supporting a conviction, trial courts are bound by the following legal principles:

> A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Commonwealth v. Weir*, 201 A.3d 163, 167-68 (Pa. Super. 2018) (quotation marks and citation omitted), *aff'd on other grounds*, 239 A.3d 25 (Pa. 2020).

However, our standard of review for a weight-of-the-evidence claim is distinct from that of the trial court. Specifically, this Court has explained:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.
>
> The finder of fact is the exclusive judge of the weight of the evidence, as the fact-finder is free to believe all, part, or none of the evidence presented and determines the credibility of the witnesses. Therefore, we will reverse a verdict and grant a new trial only where the trial court abused its discretion in declining to find that the verdict is so contrary to the evidence as to shock one's sense of justice.

*Id.* at 168 (citations omitted and formatting altered).

Here, the trial court addressed Appellant's weight claim as follows:

> [Appellant] takes issue with the fact that the contraband, which was discovered underneath a futon that he was sleeping on and in the pockets of a pair of pants located within the attic space, was "assumed" to be his. [Appellant] claims that the Commonwealth never proved constructive possession of the contraband and that the jury improperly dismissed the [d]efense's theory that anyone else in the house could have hidden the contraband in [Appellant's] clothing. [Appellant] claims that this theory is bolstered by the fact that he was not even present in the home

when the contraband was discovered. He also takes issue with the fact that Ms. Hines was combative on the stand and presented conflicting testimony.

Despite [Appellant's] argument, this [c]ourt finds nothing shocking about the jury's verdict in this case. The drugs for which [Appellant] was charged with possessing were found in the space [Appellant] was using for overnight accommodations. This area was searched only after police responded to a call regarding a disturbance involving [Appellant]. After police arrived, they suspected [Appellant] was in possession of contraband due to the smell of marijuana emanating from his person. After he was searched, police discovered not only illegal drugs, but also small ziplock baggies that were commonly used by drug dealers.

After being given permission to search the attic where [Appellant] was staying overnight, police searched the belongings that Ms. Hines indicated belonged to [Appellant]. Police found scales and approximately $4,000 worth of cocaine. All of these facts, taken together, illustrate a clear picture to this [c]ourt that [Appellant] was a drug dealer and that the items confiscated clearly belonged to him. Although they were found in Ms. Hines' house, they were discovered in the area where [Appellant] was staying overnight and concealed within the rest of his belongings that he kept there. Ms. Hines also testified that the clothing where the drugs were found belonged to [Appellant].

At trial, the jury was given the opportunity to review all of this evidence and were in the best position to determine the credibility of the witnesses while also considering the evidence that was discovered and utilized by the Commonwealth. There is nothing shocking about the guilty verdict that was returned in this case and therefore this [c]ourt has concludes that the verdict was proper given the evidence and testimony presented.

Trial Ct. Op & Order, 4/19/21, at 5-6.

Based on our review of the record, we discern no abuse of discretion by the trial court in rejecting Appellant's weight claim. *See Weir*, 201 A.3d at 168. Further, to the extent Appellant invites this Court to re-weigh the evidence presented at trial, that is not the role of our appellate review. *See*

*Commonwealth v. Vargas,* 108 A.3d 858, 867 (Pa. Super. 2014) (*en banc*) (stating that this Court may not "[re-]weigh the evidence and substitute our judgment for that of the fact-finder" (citations omitted and formatting altered)). Therefore, Appellant is not entitled to relief on this claim.

**Legality of Sentence**

Appellant argues that his sentence is illegal because the trial court erroneously calculated his PRS and applied the sentencing guidelines for RFEL. Appellant's Brief at 51. Specifically, Appellant claims that there was insufficient evidence to establish how his out-of-state convictions should be scored for purposes of his PRS. *Id.* at 52. Appellant acknowledges that at the post-sentence motions hearing, Probation Officer Michelle Marshall stated that Appellant was a RFEL based on his prior convictions for robbery in New York and possessing a firearm in New Jersey. *Id.* However, Appellant asserts that the PSI report "was never entered into evidence, and Ms. Marshall was never sworn in, so there is no way to verify these statements nor are the statements given under oath." *Id.* Further, Appellant argues that the trial court failed to analyze the point value of his out-of-state convictions under 204 Pa. Code § 303.8. *Id.* Therefore, Appellant requests that we remand the matter to the trial court for further proceedings.

Initially, we note that although Appellant frames his argument as a legality-of-sentence issue, his claim implicates the discretionary aspects of his sentence. *See Commonwealth v. Shreffler*, 249 A.3d 575, 583 (Pa. Super. 2021) (stating that it is "well-settled that a challenge to the calculation of a

prior record score goes to the discretionary aspects, not legality, of sentencing" (citation omitted)); *see also Commonwealth v. Archer*, 722 A.2d 203, 211 (Pa. Super. 1998) (*en banc*) (stating that "any misapplication of the Sentencing Guidelines constitutes a challenge to the discretionary aspects of sentence").

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citation omitted). Before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether Appellant preserved his issues; (3) whether Appellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the sentencing code.

*Commonwealth v. Corley*, 31 A.3d 293, 296 (Pa. Super. 2011) (citations omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." *Commonwealth v. Malovich*, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted); *see also* Pa.R.A.P. 302(a) (stating that "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal").

Here, the record reflects that Appellant preserved this issue by raising it in his post-sentence motion, filing a timely notice of appeal, and including it in his Rule 1925(b) statement. Although Appellant did not include a Rule 2119(f) statement in his brief, the Commonwealth did not object to the omission. *See Commonwealth v. Anderson*, 830 A.2d 1013, 1017 (Pa. Super. 2003) (stating that "[i]f an appellant fails to comply with Pa.R.A.P. 2119(f) and the Commonwealth does not object, the reviewing Court may overlook the omission if the presence or absence of a substantial question can easily be determined from the appellant's brief" (citation omitted)). Further, Appellant's claim raises a substantial question for our review. *See Shreffler*, 249 A.3d at 584 (reiterating that "a claim that a trial court miscalculated the appellant's prior record score raises a substantial question" (citation omitted)). Therefore, we will review the merits of Appellant's claim.

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

*Commonwealth v. Raven*, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

"When imposing a sentence, the sentencing court must consider the factors set out in 42 Pa.C.S. § 9721(b), [including] the protection of the public,

[the] gravity of offense in relation to impact on victim and community, and [the] rehabilitative needs of the defendant." ***Commonwealth v. Fullin***, 892 A.2d 843, 847 (Pa. Super. 2006) (citation omitted and formatting altered). Additionally, the trial court "must consider the sentencing guidelines." ***Id.*** at 848 (citation omitted). However, "where the trial court is informed by a PSI [report], it is presumed that the court is aware of all appropriate sentencing factors and considerations, and that where the court has been so informed, its discretion should not be disturbed." ***Commonwealth v. Edwards***, 194 A.3d 625, 638 (Pa. Super. 2018) (citations omitted and formatting altered).

When calculating a defendant's PRS based on out-of-state convictions, this Court has explained:

> A prior conviction from another state court, federal court, or foreign jurisdiction "is scored as a conviction for the current equivalent Pennsylvania offense." 204 Pa. Code § 303.8(f)(1). If there is no current Pennsylvania equivalent, the trial court must base the grading of the crime on the maximum sentence allowed; if the grade of the prior felony conviction is unknown, it must be treated as an F3. 204 Pa. Code § 303.8(d)(2), (f)(3).
>
> *        *        *
>
> [W]hen determining the Pennsylvania equivalent statute for a prior, out-of-state conviction for prior record score purposes, courts must identify the elements of the foreign conviction and on that basis alone, identify the Pennsylvania statute that is substantially identical in nature and definition to the out-of-state offense. Courts are not tasked with ascertaining the statute under which the defendant would have been convicted if he or she had committed the out-of-state crime in Pennsylvania. Rather, we must compare the elements of the foreign offense in terms of classification of the conduct proscribed, its definition of the offense, and the requirements for culpability to determine the Pennsylvania equivalent offense.

*Commonwealth v. Spenny*, 128 A.3d 234, 242, 250 (Pa. Super. 2015) (some quotation marks and citations omitted); *see also* 204 Pa. Code § 303.4(a)(2) (stating that only first and second degree felony convictions count towards a defendant's designation as a RFEL).

Initially, we note that to the extent Appellant claims that the PSI report is not part of the record, our review confirms that the trial court ordered a PSI report and the parties discussed the contents of the report at the sentencing hearing. *See* N.T. Sentencing Hr'g at 2-3. Further, although the PSI report was not included in the certified record that was originally transmitted to this Court, it was later added after the Commonwealth filed a motion to supplement the record. Therefore, we will proceed to address Appellant's substantive claim.

Here, at the sentencing hearing, the trial court appeared to accept the parties' contention that Appellant's convictions for robbery and assault counted towards his PRS calculation. Prior to sentencing, the trial court explained:

> I reviewed [the PSI report]. The ranges, [Appellant's] prior record which it's not the longest I've seen but sure isn't short, and it's unfortunately got some prior problems and concern but that probably factors more into my maximum than it does the minimum in this matter.
>
> He has a juvenile robbery in 1994 where he received 30 to 90 months in New York. It was--even though he was a juvenile, it was a first offense forceable theft armed with a deadly weapon. That's pretty significant. Then in [2001] he got a possession of firearm unlawful purpose, he got a 5 year confinement in New Jersey. It doesn't say the amount. But anyways, then there was a drug charge criminal sale of a controlled substance through New

- 26 -

York, 30 months post release supervision one year. Then in 2012 or I'm sorry, yeah 2012 April, another criminal sale controlled substance, third narcotics in New York, he got a 30 month sentence post release supervision 2 years.

And then 2012 also an assault second degree the one we talk[ed] about [that was] 2 to 4 years. There was an assault dismissed in Lebanon County which I won't get into. And [in this case,] he was clearly convicted by a jury of his peers and I actually polled the jurors on all of the questions including the amount, etc. the matter, and they found him guilty of violation of [PWID, and] count two merges.

But the ranges are calculated based on a person's prior record. So I decided to go with the 40 months as the minimum but the maximum is going to be 15 years. I'm going to tell you why. It could have gone less but it clearly could have gone a little more. But [Appellant] still isn't getting the message here, and he needs a long supervision. What I did do he's not RRRI eligible because of his prior record. But we have to talk about boot camp, he isn't [eligible for] that either. But I didn't--I didn't strike him from eligibility of the state drug treatment program. I don't know whether they're running it or not. Who knows with the state. But I left that blank. I will tell you that, you know, I wasn't going below 40 months, no way. I'll leave it at that. I think that's enough on the record.

N.T. Sentencing Hr'g at 5-7.

At the post-sentence motions hearing, Probation Officer Marshall stated that Appellant's RFEL classification was based on his New York conviction for robbery and his New Jersey conviction for unlawfully possessing a firearm. *See* N.T. Post-Sentence Mot. Hr'g at 4. The Commonwealth did not present any evidence establishing the elements of either offense, and the trial court did not identify the equivalent Pennsylvania statutes for purposes of the PRS calculation. However, the trial court ultimately concluded that the

Commonwealth properly classified Appellant as RFEL and denied Appellant's motion.

In its response to this Court's order for a Rule 1925(a) opinion, the trial court explained:

> [Appellant] argues that his sentence is an illegal sentence. [Appellant] already entered a motion to modify sentence on December 16, 2020, and a hearing on the matter was held on January 27, 2021. This transcript is a part of the record filed on June 24, 2021. At the hearing[,] the Commonwealth provided a witness which explained that [Appellant's] prior record score as RFEL was correct and that his sentencing level was a five, which created the misunderstanding by Appellant and his counsel. Therefore, Appellant's sentence is a legal sentence.

Trial Ct. Resp. to Order at 2.

Our review of the record confirms that Appellant has prior convictions for first-degree robbery with a deadly weapon, and second-degree assault with a deadly weapon in the State of New York.[6]  *See* PSI Report, 10/23/20, at 3.  Appellant was also convicted of possessing a firearm for an unlawful purpose in New Jersey.  *Id.*  However, it remains unclear as to which out-of-state convictions the trial court ultimately considered when concluding that Appellant's PRS was RFEL.  Further, the trial court failed to consider the elements of the out-of-state convictions or identify the Pennsylvania statutes that were "substantially identical in nature and definition."  *See Spenny*, 128 A.3d at 250.

_____

[6] Appellant also has prior convictions for drug-related offenses.

In any event, we would note that Appellant's New York conviction for assault appears to be equivalent to the Pennsylvania statute for aggravated assault with a deadly weapon, a felony of the second degree. ***Compare*** N.Y. Penal Law § 120.05 (stating that "[a] person is guilty of assault in the second degree when . . . [w]ith intent to cause physical injury to another person, he causes such injury to such person or to a third person by means of a deadly weapon or a dangerous instrument") ***with*** 18 Pa.C.S. § 2702(a)(4) (stating that a person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon"). Therefore, if Appellant's assault conviction is the equivalent of a second-degree felony, it would count towards his RFEL designation. ***See*** 204 Pa. Code § 303.4(a)(2) (stating that first and second degree felony convictions count towards a defendant's RFEL designation).

However, it appears that Appellant's New York robbery conviction is the equivalent of 18 Pa.C.S. § 3701(a)(1)(v), a third-degree felony. ***Compare*** N.Y. Penal Law § 160.15 (stating that "[a] person is guilty of robbery in the first degree when he forcibly steals property and when, in the course of the commission of the crime or of immediate flight therefrom, he or another participant in the crime . . . is armed with a deadly weapon") ***with*** 18 Pa.C.S. § 3701(a)(1)(v) (stating that "[a] person is guilty of robbery if, in the course of committing a theft, he . . . physically takes or removes property from the person of another by force however slight").

Likewise, Appellant's New Jersey conviction for unlawful firearms possession appears to be the equivalent of possessing an instrument of crime in Pennsylvania, which is a misdemeanor offense. **Compare** N.J.S.A. 2C:39-4(a)(1) (stating that "[a]ny person who has in his possession any firearm with a purpose to use it unlawfully against the person or property of another" is guilty of possessing a firearm for an unlawful purpose); **with** 18 Pa.C.S. § 907(b) (stating that "[a] person commits a misdemeanor of the first degree if he possesses a firearm or other weapon concealed upon his person with intent to employ it criminally").

In sum, because the trial court did not make specific factual findings as to how Appellant's prior convictions affected his PRS, we conclude that the trial court erred in applying the sentencing guidelines for RFEL. Therefore, although we affirm Appellant's convictions, we must vacate the trial court's judgment of sentence and remand the matter for resentencing.

On remand, we direct the trial court to make findings of fact and conclusions of law relative to each of Appellant's prior convictions and his PRS. Specifically, the trial court must identify each of Appellant's prior convictions and determine whether those convictions impact Appellant's PRS. The trial court must also determine whether Appellant's out-of-state convictions are equivalent to a Pennsylvania offense and identify both the crime and the grading for each relevant conviction. **See** 204 Pa. Code § 303.8(d)(2), (f)(1), (f)(3); **see also Spenny**, 128 A.3d at 242, 250. Further, the trial court shall determine which, if any, of Appellant's prior convictions would count towards

a RFEL designation. **See also** 204 Pa. Code § 303.4(a)(2). After making these determinations, the trial court shall state Appellant's PRS, consider the relevant sentencing guidelines, and resentence Appellant accordingly.

Judgment of sentence vacated. Case remanded for further proceedings. Jurisdiction relinquished.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 6/16/2022