**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| TYLER MICHAEL MANUEL | : | |
| | : | |
| Appellant | : | No. 552 WDA 2023 |

Appeal from the Judgment of Sentence Entered March 8, 2023
In the Court of Common Pleas of Clarion County
Criminal Division at No(s):  CP-16-CR-0000234-2021

BEFORE:  PANELLA, P.J.E., KING, J., and BENDER, P.J.E.

MEMORANDUM BY KING, J.:                    **FILED: June 10, 2024**

Appellant, Tyler Michael Manuel, appeals from the judgment of sentence entered in the Clarion County Court of Common Pleas, following his jury trial conviction for access device fraud.[1]  We affirm.

The relevant facts and procedural history of this appeal are as follows. Beginning in 2017, Appellant worked as the librarian at the Foxburg Free Library.[2]  As part of his duties, Appellant occasionally needed to buy books and other supplies for the library.  To effectuate such purchases, the library board's former president, Verne Mahood, obtained a business credit card from Chase Bank.  Although Appellant retained possession of the credit card, he

---

[1] 18 Pa.C.S.A. § 4106(a)(1)(ii).

[2] Throughout the trial, witnesses referred to Appellant's position as both "librarian" and "director."

was not allowed to use it for personal expenses. Appellant resigned from his position with the library in March 2020. Appellant, however, did not return the library's credit card. When library officials contacted Appellant to ask for the card's return, Appellant claimed that he had destroyed it.

In June 2020, the library board's current president, Denise Shekell, discovered that the credit card had an unpaid balance of over $14,000.00. Ms. Shekell reviewed the credit card account statements and discovered that Appellant had made several unauthorized transactions for personal expenses. Ms. Shekell contacted police about the matter on July 6, 2020. On October 7, 2020, Pennsylvania State Police Trooper Joshua Bauer interviewed Appellant about his use of the credit card. During the interview, Appellant admitted that "he used the card to make personal purchases and used the card to pay outstanding bills." (Affidavit of Probable Cause, dated 3/24/21, at 2). Appellant's personal purchases included fast food, video games, automobile repairs, and the rental of a self-storage unit.

The trial court set forth the subsequent procedural history of this appeal as follows:

> On March 24, 2021, the criminal complaint was filed and [Appellant] was charged with using an access device issued to another who did not authorize use, 18 Pa.C.S.A. § 4106(a)(1)(ii). On the preliminary hearing date, July 6, 2021, the Clarion County District Attorney (hereinafter, "district attorney") offered to recommend [Appellant's] case for the Accelerated Rehabilitative Disposition program ("ARD") with restitution to be paid during the term of ARD. [Appellant] waived his preliminary hearing on that date, however, said waiver was contingent upon [Appellant]

- 2 -

retaining his ability to contest the amount of restitution he would ultimately be required to pay. Thereafter, there was no activity in the case until November 1[6], 2021 and again on December 13, 2021, when the district attorney emailed [Appellant's] prior counsel, Attorney Alexander Lindsay, Jr., Esq. (hereinafter, "Attorney Lindsay") to inquire as to whether [Appellant] had discovered any "proof" warranting a reduction in the amount of restitution owed. Attorney Lindsay responded to the District Attorney's email on December 14, 2021, stating that [Appellant] wanted to challenge the restitution amount and that he would send the related figures to the District Attorney on December 15, 2021. However, the figures were never delivered, and Attorney Lindsay did not contact the District Attorney again until January 12, 2022, at which time the District Attorney and Attorney Lindsay agreed that [Appellant] should be scheduled for a special plea hearing on January 26, 2022. The January 26, 2022 hearing was continued by the court to February 9, 2022.[3]

On February 7, 2022, Attorney Lindsay withdrew as [Appellant's] counsel. Attorney John Bongivengo, Esq. (hereinafter, "Attorney Bongivengo") thereafter entered his appearance and requested a continuance of the February 9, 2022 special plea hearing, the request was granted but rather than scheduling a special plea hearing, the case was scheduled for a criminal conference on March 9, 2022. On March 9, 2022, following the criminal conference, the parties agreed that the case would be scheduled for a special plea hearing on April 20, 2022 and submitted a conference form indicating the same to the court. At the special plea hearing on April 20, 2022, defense counsel informed the court that [Appellant] rejected the Commonwealth's offer of ARD and wanted to proceed to trial. The court scheduled [Appellant's] criminal pretrial conference for July 15, 2022. [Appellant] filed [a Pa.R.Crim.P. 600] motion on July 14, 2022 and requested a continuance of the pretrial conference pending the resolution of this motion.

_____

[3] The January 26, 2022 hearing was continued "due to the unavailability of the court," and "all plea and sentence hearings scheduled on January 26, 2022" were continued. (Order, filed 1/26/22).

(Opinion and Order Denying Pa.R.Crim.P. 600 Motion, filed 9/14/22, at 1-3) (unnumbered) (some capitalization omitted).

The court conducted a Rule 600 hearing on August 22, 2022. By opinion and order entered September 14, 2022, the court denied Appellant's Rule 600 motion. Appellant proceeded to trial, and a jury found him guilty of one count of access device fraud. On March 8, 2023, the court sentenced Appellant to three (3) years of probation and restitution in the amount of $4,227.90. Appellant timely filed a post-sentence motion on March 17, 2023. In it, Appellant challenged the weight and sufficiency of the evidence presented at trial. On April 18, 2023, the court denied Appellant's post-sentence motion.

Appellant timely filed a notice of appeal on May 16, 2023. On May 18, 2023, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant timely filed his Rule 1925(b) statement on June 7, 2023.

Appellant now raises five issues for this Court's review:

> Whether the court erred and abused its discretion in denying [Appellant's] motion to dismiss pursuant to [Pa.R.Crim.P.] 600?

> Whether the court erred and abused its discretion in finding the Commonwealth produced sufficient evidence to establish the charge of access device fraud, where the device was issued in the name of [Appellant] by Chase Credit Card?

> Whether the court erred and abused its discretion by finding the conviction was not against the weight of the evidence?

- 4 -

> Whether the court abused its discretion in allowing [Appellant's] statement to be introduced prior to the *corpus delicti* being established?
>
> Whether the court abused its discretion in ordering restitution to Foxburg Free Library where there was no evidence presented at sentencing that the Foxburg Free Library paid any amount towards Chase Credit Card?

(Appellant's Brief at 9).

In his first issue, Appellant contends that his trial did not begin until December 2022, well after the Rule 600 mechanical run date of March 24, 2022. In evaluating the periods of delay throughout the case, Appellant notes that the parties participated in criminal conferences in September, October, and November 2021. At these conferences, the parties addressed the possibility of Appellant's admission into the ARD program, as well as the exact amount of restitution. Appellant maintains that the amount of restitution remained an issue during the first months of 2022, even while the Commonwealth attempted to schedule the matter for a plea hearing. Appellant asserts that plea negotiations ultimately broke down, and the Commonwealth decided that the matter would go to trial in the spring of 2022. Appellant maintains that the scheduling of a plea hearing "is within the normal progression of a case and … is not 'delay'" for Rule 600 purposes, and he emphasizes that there was no evidence that he ever accepted the Commonwealth's ARD offer, such that he could have created a period of excludable delay. (*Id.* at 22).

Appellant also disputes the trial court's findings of fact set forth in the

opinion denying the Rule 600 motion. Specifically, Appellant claims his attorney did not agree "with a special plea hearing being set or requesting a continuance." (*Id.* at 23). Regarding the disputed amount of restitution, Appellant acknowledges the court's finding that the Commonwealth sent emails to defense counsel at the end of 2021 to ask whether counsel had discovered evidence warranting a lesser amount of restitution. Appellant argues, however, that "the request for proof does not show due diligence on behalf of the Commonwealth." (*Id.*) Further, Appellant insists that the parties were arguing over the amount of restitution as early as the July 5, 2021 preliminary hearing, and the Commonwealth "at that time could have simply offered ARD and requested a restitution hearing for a determination of the appropriate amount." (*Id.*) Appellant concludes that he was not responsible for any periods of delay, the Commonwealth did not act with due diligence, and the court erred by denying his Rule 600 motion. We disagree.

The following principles apply to our review of a speedy trial claim:

> Our standard of review in a Rule 600 issue is whether the trial court abused its discretion. Our scope of review when determining the propriety of the trial court is limited to the evidence in the record, the trial court's Rule 600 evidentiary hearing, and the trial court's findings. We must also view the facts in the light most favorable to the prevailing party[.]

*Commonwealth v. Risoldi*, 238 A.3d 434, 449 n.14 (Pa.Super. 2020), *appeal denied*, 664 Pa. 562, 244 A.3d 1230 (2021).

> Additionally, when considering the trial court's ruling, this Court is not permitted to ignore the dual purpose behind Rule 600. Rule 600 serves two equally important functions:

(1) the protection of the accused's speedy trial rights, and (2) the protection of society. In determining whether an accused's right to a speedy trial has been violated, consideration must be given to society's right to effective prosecution of criminal cases, both to restrain those guilty of crime and to deter those contemplating it. However, the administrative mandate of Rule 600 was not designed to insulate the criminally accused from good faith prosecution delayed through no fault of the Commonwealth.

So long as there has been no misconduct on the part of the Commonwealth in an effort to evade the fundamental speedy trial rights of an accused, Rule 600 must be construed in a manner consistent with society's right to punish and deter crime. In considering these matters …, courts must carefully factor into the ultimate equation not only the prerogatives of the individual accused, but the collective right of the community to vigorous law enforcement as well.

*Commonwealth v. Martz*, 232 A.3d 801, 809-10 (Pa.Super. 2020) (quoting

*Commonwealth v. Peterson*, 19 A.3d 1131, 1134-35 (Pa.Super. 2011)).

Rule 600 sets forth the speedy trial requirements and provides in pertinent part:

**Rule 600.  Prompt Trial**

**(A)   Commencement of Trial; Time for Trial**

\*     \*     \*

(2)   Trial shall commence within the following time periods.

(a)   Trial in a court case in which a written complaint is filed against the defendant shall commence within 365 days from the date on which the complaint is filed.

\*     \*     \*

**(C)   Computation of Time**

(1)   For purposes of paragraph (A), periods of delay at any stage of the proceedings caused by the Commonwealth when the Commonwealth has failed to exercise due diligence shall be included in the computation of the time within which trial must commence.  Any other periods of delay shall be excluded from the computation.

Pa.R.Crim.P. 600(A)(2)(a), (C)(1).

Due diligence is a fact-specific concept that must be determined on a case-by-case basis.  Due diligence does not require perfect vigilance and punctilious care, but rather a showing by the Commonwealth that a reasonable effort has been put forth.  Due diligence includes, *inter alia*, listing a case for trial prior to the run date, preparedness for trial within the run date, and keeping adequate records to ensure compliance with Rule 600.  Periods of delay caused by the Commonwealth's failure to exercise due diligence must be included in the computation of time within which trial must commence.

*Martz, supra* at 810-11 (internal citations and quotation marks omitted).

Additionally, "time attributable to the normal progression of a case simply is not 'delay' for purposes of Rule 600." *Commonwealth v. Mills*, 640 Pa. 118, 122, 162 A.3d 323, 325 (2017).  "[C]ourts of original jurisdiction must apply judgment in distinguishing between delay attributable to the court and that which should be allocated to a party." *Id.*  "These courts also have discretion, however, to differentiate between time necessary to ordinary trial preparation and judicial delay arising out of the court's own scheduling concerns." *Id.*

Instantly, the trial court analyzed the pretrial progression of Appellant's case and determined that the Commonwealth had acted with due diligence:

> On November 1[6], 2021 and December 13, 2021, the district attorney sent an email to Attorney Lindsay, asking whether he had discovered any "proof" warranting reduction of [Appellant's] restitution amount and Attorney Lindsay did not respond until December 14, 2021. On January 26, 2022, [Appellant] was scheduled for special plea court, but the hearing was continued by the court until February 9, 2022. On February 7, 2022, Attorney Lindsay withdrew as counsel for [Appellant] and [Appellant's] new attorney, Attorney Bongivengo continued the proceeding, with a criminal conference scheduled by the court for March 9, 2022 and a special plea hearing date of August 20, 2022 requested by the parties at which time the court scheduled the criminal pretrial conference for July 15, 2022. These delays were not caused by the Commonwealth's failure to exercise due diligence but instead by continuances requested by [Appellant] and the general progression of the court calendar. It is clear upon review of the progression of this case that dismissal of [Appellant's] charges is not required under Rule 600 at this time.

(Opinion and Order Denying Pa.R.Crim.P. 600 Motion at 4-5) (unnumbered) (some capitalization omitted).

Here, the record confirms the court's conclusions. At the Rule 600 hearing, Appellant asked the court "to take judicial notice of the docket in this case," and he did not offer additional evidence to support his claim. (N.T. Rule 600 Hearing, 8/22/22, at 10). In contrast, the Commonwealth submitted a bundle of documents to confirm the pretrial timeline for Appellant's case. (*See* Commonwealth's Exhibit 1, dated 8/22/22). These documents established that the Commonwealth offered ARD to Appellant, with restitution in the amount of $4,317.96, at the preliminary hearing. (*See* N.T. Rule 600 Hearing at 4; N.T. Preliminary Hearing, 7/6/21, at 5, attached to Commonwealth's Exhibit 1). Also at the preliminary hearing, Attorney Lindsay

indicated that he was investigating whether Appellant owed a lesser amount of restitution.

After the preliminary hearing, the Commonwealth repeatedly contacted Attorney Lindsay to find out whether he had discovered evidence warranting a reduction in restitution. In the email sent to Attorney Lindsay on November 16, 2021, the district attorney stated: "Have you had any update on this? I'd like to put this on for a date for him to enter into ARD, but also want you to have time to contest any of the restitution prior to that as I don't want to have a restitution hearing on an ARD offer." (*See* Email, dated 11/16/21, attached to Commonwealth's Exhibit 1). The district attorney followed up with Attorney Lindsay on December 13, 2021. On December 14, 2021, Attorney Lindsay responded, indicating that Appellant still wanted to challenge the amount of restitution, and Attorney Lindsay would "try to get the new figures to you tomorrow[.]" (*See* Email, dated 12/14/21, attached to Commonwealth's Exhibit 1). Nevertheless, by email dated February 2, 2022, the district attorney again contacted Attorney Lindsay to reiterate that he had yet to receive Appellant's "list contesting/justifying some of the allegations." (*See* Email, dated 2/2/22, attached to Commonwealth's Exhibit 1). Shortly thereafter, Attorney Lindsay withdrew from the case, Attorney Bongivengo assumed representation, and Appellant expressed his intent to reject the ARD offer.

Although Appellant argues that the Commonwealth failed to

demonstrate due diligence under these circumstances, we cannot agree. The Commonwealth offered Appellant admission into the ARD program, along with a fixed amount of restitution, at the preliminary hearing. While Appellant questioned the amount of restitution as calculated by the Commonwealth, the record does not reveal that he made timely efforts to offer the Commonwealth a revised amount. Instead, the record demonstrates that the Commonwealth was the party who attempted to keep the case moving toward a resolution, especially when faced with defense counsel's continued promises that Appellant was working to determine a revised amount of restitution. Thus, the court correctly determined that any pretrial delay occurred despite the Commonwealth's exercise of due diligence, and Appellant is not entitled to relief on his first issue. **See Martz, supra**.

In his second and third issues, Appellant asserts that the Commonwealth "utterly failed to present any evidence [demonstrating that the credit card] account or the access device belonged to Foxburg Free Library." (Appellant's Brief at 26-27). Rather, Appellant claims that the credit card statements reflect that it was issued in Appellant's name "with his own separate and distinct card number." (**Id.** at 27). Appellant also complains that "[t]he Commonwealth produced no evidence of the account agreement between Chase Bank and the Foxburg Free Library, nor any credit report from the Foxburg Free Library to indicate the Chase Bank account." (**Id.**)

Regarding the weight of the evidence, Appellant maintains that the

credit card statements were addressed as follows: "Verne T. Mahood, Foxburg Free Library, P.O. Box 304, Foxburg, Pennsylvania." (**Id.** at 29). Appellant insists that "[m]aking the jump from address to account holder is not a reasonable inference," and the address makes it more likely that Ms. Mahood was an individual account holder. (**Id.**) Moreover, Appellant emphasizes Ms. Shekell's testimony that she could not obtain the credit card statements until a representative from Ms. Mahood's estate provided authorization.[4] Under these circumstances, Appellant concludes that the Commonwealth presented insufficient evidence to support the jury's verdict, and the verdict is against the weight of the evidence. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a

---

[4] Ms. Mahood died in May 2019. (**See** N.T. Trial, 12/13/22 at 28).

crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting ***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

Additionally,

The weight of the evidence is exclusively for the finder of the fact who is free to believe all, part or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the … verdict if it is so contrary to the evidence as to shock one's sense of justice.

***Commonwealth v. Small***, 559 Pa. 423, [435,] 741 A.2d 666, 672-73 (1999). Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004) (most internal citations omitted).

The Crimes Code defines access device fraud as follows:

**§ 4106.  Access device fraud**

- 13 -

**(a)** **Offense defined.**—A person commits an offense if he:

(1) uses an access device to obtain or in an attempt to obtain property or services with knowledge that:

\*   \*   \*

(ii) the access device was issued to another person who has not authorized its use[.]

18 Pa.C.S.A. § 4106(a)(1)(ii). The definition of "access device" includes credit cards. 18 Pa.C.S.A. § 4106(d).

Instantly, the Commonwealth presented testimony from Ms. Shekell, who explained that she had been a member of the library's board for twenty-three (23) years and served as the board's president "for probably six." (N.T. Trial, 12/13/22, at 27). Ms. Shekell testified that Ms. Mahood was the prior president of the board. During her tenure, Ms. Mahood obtained the Chase Bank credit card to give librarians more flexibility when purchasing books and supplies:

> … Brenda Beikert was the librarian at the time, and at board meetings there was some discussion that Brenda was having a hard time sometimes buying things because we tried to have an account when we bought books, etc., but sometimes if there wasn't an account, she needed a credit card to buy, occasionally buy books or things like that.

(***Id.*** at 30). Ms. Shekell emphasized that the librarian could use the credit card only "[f]or the occasion when we didn't have an account and the librarian needed to buy something[.]" (***Id.*** at 35).

The district attorney then showed Ms. Shekell reports from the board's

- 14 -

treasurer. The treasurer's reports memorialized payments made to Chase Card Services to pay the credit card debt. Each report included handwritten notations from Appellant to list the items he had purchased using the card. Appellant, however, did not disclose any personal purchases in these notations. Ms. Shekell first learned about Appellant's personal purchases in June 2020, after Appellant had resigned from the library. At that time, "[t]he library received a letter in the mail from a collection agency … seeking $14,000.00 to Verne Mahood's deceased account."[5] (*Id.* at 47). Ms. Shekell was "very surprised" to see the letter from the collection agency, and she "had no idea" how the library could owe so much money. (*Id.* at 48).

After learning about the amount owed, Ms. Shekell obtained copies of the itemized billing statements for the credit card. These statements revealed charges for unapproved expenses, including video games, fast food, automobile repair services, and a self-storage facility rental. (*See id.* at 44-46). Ms. Shekell subsequently contacted the state police, who interviewed Appellant on October 6, 2020. During the interview, Trooper Bauer showed Appellant the list of purchases that were made with the credit card, and Appellant admitted that some of the purchases were his own personal expenses. (*See id.* at 73-74).

_____

[5] As noted by Appellant, the credit card statements issued by Chase Bank listed both "Verne T. Mahood" and "Foxburg Free Library" as addressees. (*See* Commonwealth's Trial Exhibit 1.1, dated 12/13/22). The bank sent the statements to the library's post office box. (N.T. Trial, 12/13/22, at 48).

Viewing this evidence in the light most favorable to the Commonwealth as verdict winner, sufficient evidence supported Appellant's conviction. **See Sebolka, supra**. We emphasize Ms. Shekell's unequivocal testimony that: 1) Ms. Mahood, in her capacity as board president, obtained the credit card on behalf of the library; 2) a librarian could use the credit card to purchase items from vendors with whom the library did not have an account; and 3) a librarian was not permitted to make personal purchases with the credit card. Regarding Appellant's weight claim, the court concluded that the verdict was not against the weight of the evidence. (**See** Order Denying Post-Sentence Motion, filed 4/18/23, at 4). Specifically, the court found that the jury weighed the evidence and "properly concluded that the Library Board authorized [Appellant] to use the credit card only to make Library purchases and he knew he was not authorized to make personal purchases." (**Id.**) Following our review, we discern no abuse of discretion in the court's ruling on the weight claim. **See Champney, supra**. Thus, Appellant is not entitled to relief on his second and third issues.

In his fourth issue, Appellant asserts that "Pennsylvania law precludes the admissibility of a confession absent proof of the *corpus delicti*, literally the body of the crime." (Appellant's Brief at 30). Appellant maintains that the Commonwealth did not establish the *corpus delicti* in the instant case where it did not prove "that a loss occurred and Appellant is responsible for the loss." (**Id.**) Appellant also notes that "[a]ny loss suffered by the library occurred

due to the library's own incompetent bookkeeping and a simple failure of the accountant, treasurer or any board member to simply look at the credit card statement delivered to the library." (*Id.* at 31). Under these circumstances, Appellant concludes that the court erred by admitting his inculpatory statement to police. We disagree.

This Court's standard of review for issues regarding the admissibility of evidence is well settled:

> Questions concerning the admissibility of evidence are within the sound discretion of the trial court and we will not reverse a trial court's decision concerning admissibility of evidence absent an abuse of the trial court's discretion. An abuse of discretion is not merely an error of judgment, but is rather the overriding or misapplication of the law, or the exercise of judgment that is manifestly unreasonable, or the result of bias, prejudice, ill-will or partiality, as shown by the evidence of record. If in reaching a conclusion the trial court overrides or misapplies the law, discretion is then abused and it is the duty of the appellate court to correct the error.

*Commonwealth v. LeClair*, 236 A.3d 71, 78 (Pa.Super. 2020), *appeal denied*, 664 Pa. 546, 244 A.3d 1222 (2021) (quoting *Commonwealth v. Belknap*, 105 A.3d 7, 9-10 (Pa.Super. 2014)).

The *corpus delicti* rule is an evidentiary rule designed to guard against the danger of a conviction based on a confession or admission where no crime was committed. *Commonwealth v. Hernandez*, 39 A.3d 406, 410 (Pa.Super. 2012), *appeal denied*, 619 Pa. 700, 63 A.3d 1244 (2013). Specifically, "[t]he *corpus delicti* rule places the burden on the prosecution to establish that a crime has actually occurred before a confession or admission

of the accused connecting him to the crime can be admitted." ***Id.*** (quoting

***Commonwealth v. Young***, 904 A.2d 947, 956 (Pa.Super. 2006), *appeal*

*denied*, 591 Pa. 664, 916 A.2d 633 (2006)).

> The Commonwealth need not prove the existence of a crime beyond a reasonable doubt as an element in establishing the *corpus delicti* of a crime, but the evidence must be more consistent with a crime than with [an] accident. The *corpus delicti*, or "body of the crime," may be proven by circumstantial evidence.
>
> *       *       *
>
> Establishing the *corpus delicti* in Pennsylvania is a two-step process. The first step concerns the trial judge's admission of the accused's statements and the second step concerns the fact finder's consideration of those statements. In order for the statement to be admitted, the Commonwealth must prove the *corpus delicti* by a preponderance of the evidence. In order for the statement to be considered by the fact finder, the Commonwealth must establish the *corpus delicti* beyond a reasonable doubt.

***Commonwealth v. Harper***, 230 A.3d 1231, 1240 (Pa.Super. 2020) (internal

citations and most quotation marks omitted).

Instantly, Ms. Shekell's testimony established that the library's board

obtained a credit card for its librarian to use for certain purchases of books

and supplies. During the period when Appellant worked as the librarian and

possessed the card, the card was used to purchase several personal items that

were unrelated to library business. This testimony constituted evidence that

was "more consistent with a crime than with an accident," and it demonstrated

the *corpus delicti* by a preponderance of the evidence. ***See id.*** On this record,

the court did not err in admitting Appellant's statement to the police, and

Appellant is not entitled to relief on his fourth issue. *See LeClair, supra*.

In his final issue, Appellant argues that "there must be a direct nexus between the restitution ordered and the crime for [which] the defendant was convicted," and "the amount ordered must be supported by the record[.]" (Appellant's Brief at 32). Appellant claims "the Commonwealth cannot show a nexus between the crime of access device fraud and Foxburg Free Library" where "the Commonwealth presented no evidence that the Foxburg Free Library paid for any purchase that wasn't authorized." (*Id.* at 33). Appellant further argues that the Commonwealth did not present any evidence to support the specific amount of $4,227.90 in restitution. Appellant concludes that this Court must vacate the restitution portion of the sentencing order.

As a prefatory matter, we must determine whether Appellant challenges the legality or discretionary aspects of the sentence imposed. In *Commonwealth v. Weir*, 662 Pa. 402, 422, 239 A.3d 25, 37 (2020), our Supreme Court reiterated that "a challenge to the sentencing court's authority to order restitution raises a non-waivable legality of sentencing issue. A challenge to the manner in which the sentencing court exercises that authority in fashioning the restitution implicates the discretionary aspects of the sentence." Therefore, when an appellant claims that the trial court lacked statutory authority to impose restitution, it is a legality of sentencing issue. *See id.* Conversely, where an appellant "challenges only the amount of the award based on the sentencing court's consideration of the evidence of loss

- 19 -

presented by the Commonwealth, it is a challenge to the discretionary aspects of sentencing." *Id.* at 425, 239 A.3d at 38.

Here, Appellant's challenge to the court's authority to impose restitution based on its finding that the restitution was a direct result of the criminal conduct is a non-waivable challenge to the legality of the sentence. *See id. See also Risoldi, supra* at 460 n.23. Nevertheless, Appellant's claim that the Commonwealth presented insufficient evidence to support the amount of restitution awarded implicates the discretionary aspects of sentencing. *See Weir, supra*. Because Appellant failed to raise this challenge to the discretionary aspects of sentencing in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings, it is waived.[6] *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1042 (Pa.Super. 2013) (*en banc*).

We proceed to address Appellant's challenge to the legality of the restitution sentence, and the following principles guide our analysis:

---

[6] Immediately prior to the imposition of sentence, defense counsel made the following argument: "Honestly, Judge, if the [c]ourt were to order that amount of restitution, I think it should go to Chase because regardless of how Chase applies it, it benefits the library either way because they still owe the money." (N.T. Sentencing Hearing, 3/8/23, at 17). Thereafter, defense counsel added: "Your Honor, he'll comply with the sentence. If the [c]ourt orders it, you know, then we can discuss whether we want to ultimately challenge that or whatever. But if the [c]ourt sentences it, and he's to make payments on it, he'll pay." (*Id.* at 18). At the conclusion of the hearing, the court imposed the sentence, and Appellant raised no further objection to the evidence supporting the restitution award. (*See id.* at 24-25).

- 20 -

> Restitution is a mandatory component of the sentence for any crime in which a victim's property is stolen, converted or otherwise unlawfully obtained. In determining the amount and method of restitution, the court: [s]hall consider the extent of the injury suffered by the victim. However, a restitution order in a criminal case does not bar the victim from further recovery from the defendant in a civil action.
>
> When determining the amount of restitution to be imposed as part of a defendant's sentence, the trial court must look to the losses the victim would not have suffered but for the defendant's criminal conduct.
>
> Because of the statutory language "directly resulting from the crime," restitution under [Section] 1106(a) [of the Crimes Code] is proper only if there is a direct causal connection between the crime and the loss. … Thus, the sentencing court is statutorily required to impose restitution under [Section] 1106(a) when the Commonwealth has established that the defendant committed a crime, the victim suffered injury to person or property, and there exists a direct causal nexus between the crime of which defendant was convicted and the loss or damage suffered by the victim.

**Risoldi, supra** at 460-61 (internal citations, footnotes, and most quotation marks omitted).

Instantly, the aforementioned testimony established that Appellant used the library's credit card to make unauthorized, personal purchases while working as a librarian. Additionally, during his interview with Trooper Bauer, Appellant explained that it was his responsibility to pay the credit card bill "by submitting receipts to the treasurer who then approves the money from a [bank] account to be used to pay off the credit card balance." (N.T. Trial, 12/13/22, at 73). Thus, the library suffered damages when Appellant utilized

library funds to pay for credit card bills that included Appellant's unauthorized purchases. Because Appellant's criminal conduct was the but-for cause of the damages, the court properly awarded restitution. *See id.* Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/10/2024